127 N.J. Super. 37 (1974)
316 A.2d 51
CARLTON MILLER AND JUDITH MILLER, PLAINTIFFS-RESPONDENTS,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, DEFENDANT-RESPONDENT, AND CUMBERLAND MUTUAL FIRE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 5, 1973.
Decided February 20, 1974.
*38 Before Judges LYNCH, MEHLER and MICHELS.
Messrs. White, Simpson & Strout, attorneys for appellant (Mr. David J. Strout, of counsel).
Messrs. Falciani, Stoinski & Lisa, attorneys for plaintiffs-respondents (Mr. Henry R. Stoinski, of counsel).
Messrs. Martin & Crawshaw, attorneys for defendant-respondent (Mr. G. Paul Crawshaw, of counsel).
The opinion of the court was delivered by MICHELS, J.S.C., Temporarily Assigned.
This appeal involves the construction of the clause of a liability policy of insurance *39 commonly referred to as a "homeowner's policy," which extends coverage to relatives of the named insured or his spouse if the relatives are residents of the named insured's household. The court below, on a motion for summary judgment brought by plaintiffs, relying upon the two policies of insurance involved and depositions of the involved persons, held that the infant who started the fire which caused plaintiffs' property damage was a resident of his mother's household, not of his father's household, and imposed liability on her insurance carrier, Cumberland Mutual Fire Insurance Company (Cumberland). Summary judgment thereupon was entered against Cumberland in favor of plaintiffs and the father's insurance carrier, United States Fidelity & Guaranty Company (U.S.F.&G.). Cumberland appeals.
Plaintiffs originally instituted suit to recover damages to their barn which was caused by a fire set by the infant Daryl Lewis. The suit was instituted against Daryl, his natural mother, Phoebe Hackett, and his natural father, Albert Lewis. Subsequently his stepmother, Hilda Lewis, was joined as a defendant. Daryl was nine years old at the time of the fire. His parents were divorced, and each had remarried, setting up separate homes about one-half mile apart. Pursuant to a custody decree which was in effect at the time of the fire, Daryl's natural mother retained custody of Daryl, and his natural father was granted visitation rights three out of four weekends. However, in spite of the terms of the custody decree, the undisputed evidence establishes that Daryl was picked up by his father each Saturday morning at his mother's home, and taken to his father's home where he slept each Saturday. Daryl was then returned to his mother's home each Sunday. This arrangement between the mother and father was followed every weekend. Daryl lived with his mother during the week and lived with his father on weekends. In fact, in response to the question: "Who do you live with?", Daryl replied: "My dad and my mom."
*40 On the day of the fire Daryl's father picked him and his brother up at nine o'clock in the morning and brought them to his home as was customary. One of Daryl's chores at his father's home was to burn the trash, which he did on that day. Thereafter he started a fire in plaintiffs' barn which resulted in extensive damage, giving rise to the original suit brought against him and his natural parents and stepmother. Neither Cumberland, his mother's insurance carrier, nor U.S.F. & G., his father's insurance carrier, would provide a defense to that suit on behalf of Daryl. Consequently, Daryl was unrepresented until pretrial conference, when the court appointed a guardian ad litem to represent him. Thereafter, following completion of discovery, a consent judgment was entered in favor of plaintiffs and against the infant Daryl in the amount of $43,000. This action was then instituted by plaintiffs against Cumberland and U.S.F. & G. Plaintiffs contended that both policies provided coverage to Daryl for this incident.
The court below disagreed and held that only Cumberland's policy provided Daryl with coverage. The court reasoned that Daryl could not live in two places: his domicile and residence were with his mother, not his father.
Each of the policies of insurance contained the following identical provisions:
2. DEFINITIONS:
(a) Insured: The unqualified word "Insured" includes (1) the Named Insured and (2) if residents of his household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of an Insured.
Cumberland contends that the court below erred in granting summary judgment because the question of whether Daryl was a resident within the meaning of the clause under review was one of fact for a jury. We disagree. A motion for summary judgment will be granted where the pleadings and depositions do not show the existence of a genuine issue of material fact requiring disposition at trial. *41 See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954); Sokolay v. Edlin, 65 N.J. Super. 112, 120 (App. Div. 1961); Eisen v. Kostakos, 116 N.J. Super. 358, 370 (App. Div. 1971); R. 4:46-2. The pertinent facts involved in this appeal are not in dispute. They were fully developed through depositions and stand uncontroverted. The court is not precluded from adjudicating the legal consequences to be drawn from undisputed facts. Cf. United States v. General Instrument Corp., 87 F. Supp. 157, 165 (D.N.J. 1949); Fox v. Johnson & Wimsatt, 75 U.S. App. D.C. 211, 127 F.2d 729, 737 (1942). Summary judgment was therefore appropriate for the determination of the coverage issue here involved.
Cumberland further contends that the court below erred in equating the terms "domicile" and "residence," and thus holding that Daryl was a resident solely of his natural mother's household. Cumberland argues that in view of the evidence, Daryl was either solely a resident of the household of his father and therefore covered by the U.S.F. & G. policy, or, at the least, a resident of both households and therefore entitled to protection under both policies. Plaintiffs join with Cumberland in this contention, seeking the protection of the larger U.S.F. & G. policy and, alternatively, both policies.
The policies of insurance here involved extended coverage to relatives of the named insured and his spouse "if residents of his household." The terms contained in the clause under review do not have any absolute meaning. Their meaning may vary according to the circumstances in each case. Consequently, in construing the language "residents of his household," we do so in light of the well established principles set forth in Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961). In Mazzilli our Supreme Court stated:
Household is not a word of art. Its meaning is not confined within certain commonly known and universally accepted limits. True, it is frequently used to designate persons related by marriage or blood, *42 who dwell together as a family under a single roof. * * * But it has been said also that members of a family need not in all cases reside under a common roof in order to be deemed a part of the household. [at 8]
See also, Crossfield v. Phoenix Ins. Co., 77 N.J. Super. 476, 479 (App. Div. 1962).
A "resident" is generally defined as "One who has his residence in a place." Black's Law Dictionary (4th ed 1951), 1473; 2 Bouvier's Law Dictionary and Concise Encyclopedia (3rd rev. 1914), 2920. Our courts have recognized the difference between the meaning of the words "residence" and "domicile," and have held that they are not convertible terms. State v. Garford Trucking, Inc., 4 N.J. 346, 353 (1950). In State v. Benny, 20 N.J. 238 (1955), the Supreme Court defined these terms and pointed out the underlying difference as follows:
Domicile has been variously defined as the place where a person "has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning," Story, Conflict of Laws (8th ed.), § 41, p. 40, or "the habitation fixed in any place, without any present intention of removing therefrom," * * *.

* * * * * * * *
Residence, on the other hand, though parallel in many respects to domicile, is something quite different in that the elements of permanency, continuity and kinship with the physical, cultural, social and political attributes which inhere in a "home" according to our accepted understanding, are missing. Intention adequately manifested is the catalyst which converts a residence from a mere place in which a person lives to a domicile. Where a person has two homes in which he lives and between which he divides his time, it is still his intention which creates one or the other as his domicile. 1 Beale, Conflict of Laws, § 10.3  not the same intention necessary to create a domicile out of a mere residence but such additional intention manifested by a desire to exercise at one of the places the rights growing out of a true domicile and to become subject to the accompanying obligations. [at 250-251]
While a person may have only one true domicile, he may have more than one residence. State v. Garford Trucking, Inc., supra; Mercadante v. Paterson, 111 N.J. Super. *43 35, 39 (Ch. Div. 1970), aff'd 58 N.J. 112 (1971); Continos v. Parsekian, 68 N.J. Super. 54, 58 (App. Div. 1961). In fact, he may be a resident of more than one household for purposes of insurance. See Travelers Ins. Co. v. Mixon, 118 Ga. App. 31, 162 S.E.2d 830, 831 (Ct. App. 1968); State Farm Mutual Automobile Ins. Co. v. Holloway, 423 F.2d 1281, 1283 (10 Cir.1970). Consequently, Daryl could be a resident of two separate households for purposes of insurance coverage. The finding by the court below that Daryl was a resident of his mother's household does not preclude a finding that he was also a resident of his father's household as a matter of law.
U.S.F. & G. argues to the contrary, contending that the controlling factor in the determination of which household Daryl was a resident is the custody decree which gave custody to his mother and mere visitation rights to his father. We disagree. In Cal-Farm Ins. Co. v. Boisseranc, 151 Cal. App.2d 775, 312 P.2d 401 (D. Ct. App. 1957), a similar argument was raised and rejected by the court. There, the insurance carrier brought suit seeking a declaration that James Boisseranc, the infant son of August, was not covered under the terms of a comprehensive liability policy issued to August which protected August and his wife Carolyn and relatives "if residents of his household." When the policy was purchased, the family was intact. Thereafter, August and Carolyn separated, and two of the children, including James, went to live with their mother Carolyn. Subsequently, Carolyn obtained an interlocutory divorce decree, and pursuant to a modification thereof prior to the accident both parents were awarded joint custody of James with the provision that his "physical residence" would be with his mother Carolyn, and that his father August would have the right of visitation at all reasonable times, including visitation by James at his father's home. The evidence showed that James spent substantially three-fourths of his time with his father. On the day of the accident, shortly after leaving his father's *44 home and while staying with his mother, James injured another child who brought the suit from which the insurance carrier sought to be relieved. The California District Court of Appeals held that the infant was a "resident" of his father's "household" and affirmed the judgment below decreeing that the infant was an insured within the meaning of the policy. The court in reaching this result expressly rejected the argument that the custody decree controlled the question of residence as a matter of law stating:
* * * It is certainly obvious that the terms of the custody decree are not controlling as a matter of law. Certainly, even if such decree had given full custody and control of James to Carolyn, without even a right of visitation in August, and had James spent all of his time on his father's farm, James would be an "insured" within the meaning of the policy. One purpose of the extension of coverage clause is to broaden the coverage of the named insured. August, when he took out the policy, was potentially liable for the torts of his minor children under proper circumstances. Thus, the extension of coverage to "relatives" protects August, the named insured, as well as protecting the relatives. Another purpose of the extended coverage provision was to assist the insured, August, in complying with his moral and legal obligation to maintain and support his family. It is of some significance that the policy does not contain any itemization of the persons covered, specifying only the named insured, August and his partner, and the insured premises. The premium payments were not based upon the number of relatives living on the premises. [312 P.2d at 405]
Here, the undisputed evidence established that Daryl was in fact a resident of two households. He resided with his natural mother during the week from Monday to Friday, and with his natural father on weekends from Saturday to Sunday. A substantially integrated family relationship existed between Daryl and his mother on the one hand, and Daryl and his father on the other during the time that he lived with each one. Daryl's intention to be a part of each household is clearly manifested by his response to the question "Who do you live with?"  "My dad and my mom."
Accordingly, we are of the opinion that in the light of the well settled rules of construction of policies of insurance, and *45 in view of the uncontroverted facts here involved, Daryl was a resident of both his natural mother's and his natural father's households, and, therefore, an insured within the meaning of the policies of insurance issued to each. Accordingly, we hold that both Cumberland and U.S.F. & G. furnished coverage to Daryl for the property damage involved and reverse the judgment below to the extent that it was granted in favor of U.S.F. & G. Judgment will therefore be entered in favor of plaintiffs and against both Cumberland and U.S.F. & G.