260 N.J. Super. 159 (1992)
615 A.2d 660
CHARLES SJOBERG AND ALICIA SJOBERG, A MINOR, BY HER PARENT AND GUARDIAN AD LITEM CHARLES SJOBERG, PLAINTIFFS-RESPONDENTS,
v.
RUTGERS CASUALTY INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1992.
Decided November 10, 1992.
*160 Before Judges J.H. COLEMAN and SHEBELL.
Daniel Friedman argued the cause for appellant (Bruce M. Resnick, attorney; Daniel Friedman, on the brief).
Ann C. Pearl argued the cause for respondents.
The opinion of the court was delivered by SHEBELL, J.A.D.
*161 The issue in this case is whether the fifteen-year-old infant plaintiff, Alicia Sjoberg, was at the time she sustained injuries in an automobile accident in Florida on October 31, 1988, a member of her father's "family residing in his household" thereby qualifying for personal injury protection (PIP) coverage under N.J.S.A. 39:6A-4. The Law Division, faced with cross-motions for summary judgment by plaintiffs and defendant Rutgers Casualty Insurance Co. (Rutgers), granted judgment to plaintiffs for all reasonable and necessary medical expenses together with counsel fees. Rutgers in this appeal does not argue that the issue was not ripe for summary judgment; rather, it urges that the Law Division "erred in granting personal injury protection benefits to an injured minor who was not residing in the household of the insured." Rutgers' position is that Alicia was not residing in her father's household as "[o]ne cannot simultaneously reside in a household in New Jersey and Florida" and "[s]imply stated, Alicia was residing in her mother's household, not her father's household."
The undisputed facts reflect that on January 21, 1988, Charles Sjoberg completed Rutgers' application for New Jersey automobile insurance. The application was accepted as effective that same day. At that time Sjoberg was residing in New Jersey with his second wife and two daughters of his first marriage, Alicia and Jennifer. On the application he listed only the name of his second wife as an individual residing with him. He did not name his two daughters, neither of whom was of driving age.[1] Alicia's parents were divorced on May 26, 1976, *162 at which time her mother was granted custody of both girls and the father was ordered to contribute to their support. On February 11, 1982, the father was "granted permanent custody of the children" and the mother was granted "reasonable and liberal rights of visitation."
The father, in support of plaintiffs' motion for summary judgment, certified:
5. Alicia resided with me from that date until some time in August, 1988. She was then fifteen years old and decided to go to Florida to see whether or not she wanted to live there with her mother. In August, 1988, she moved to Florida in time to enroll for school. It was her intention to try living with her mother to make up her mind where she wanted to live. On October 31, 1988, approximately two months after she arrived in Florida, she was involved in an automobile accident in which she sustained severe injuries....
The only response to this certification came from the attorney for Rutgers and did not raise a factual controversy as to the above quoted facts. See R. 4:46-5(a).
N.J.S.A. 39:6A-4 in mandating PIP coverage provides as follows:
Every automobile liability insurance policy, ... insuring an automobile ... against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide personal injury protection coverage, as defined hereinbelow, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, .... [N.J.S.A. 39:6A-4 (emphasis added)].
The terms "residing" and "household" do not have "any absolute meaning." Miller v. United States Fidelity and Guar. Co., 127 N.J. Super. 37, 41, 316 A.2d 51 (App.Div. 1974). These words were used by the Legislature to describe the extent of PIP coverage, and they must be given liberal interpretation so as to include all persons the Legislature intended to be covered by the umbrella of PIP protection. See Amiano v. Ohio *163 Casualty Ins. Co., 85 N.J. 85, 90, 424 A.2d 1179 (1981); Mazzilli v. Accident & Casualty Ins. Co., 35 N.J. 1, 7, 170 A.2d 800 (1961) (interpreting similar language in a liability insurance contract); Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444, 450, 432 A.2d 544 (App.Div.), certif. denied, 88 N.J. 489, 443 A.2d 705 (1981); Brokenbaugh v. New Jersey Mfrs. Ins. Co., 158 N.J. Super. 424, 429, 386 A.2d 433 (App.Div. 1978).
Although in most circumstances the question of where one resides and related issues of "residence" may turn on the intention of the purported "resident," we do not find it necessary here to determine the precise intention of Alicia at the time of her accident. See Rosenberg v. Universal Underwriters, 217 N.J. Super. 249, 257, 525 A.2d 349 (Law Div. 1986), aff'd, 224 N.J. Super. 638, 541 A.2d 246 (App.Div.), certif. denied, 113 N.J. 333, 550 A.2d 449 (1988). The issue of whether Alicia was a resident of her father's household must be considered in the context of the contemporary family and the fluid nature of the care and responsibilities that divorced or separated parents of children are faced with in light of present-day mobility. In Miller, supra, 127 N.J. Super. at 44, 316 A.2d 51, we held, in interpreting similar language in a liability insurance contract, that a nine-year-old child of divorced parents who had each remarried "was in fact a resident of two households." We, therefore, sustained the grant of summary judgment against the natural father's insurance carrier where the mother had been granted custody of the child and the father had visitation rights three out of four weekends per month. Id. at 39, 316 A.2d 51.
Here, Sjoberg was charged with the moral and legal obligation to provide for Alicia. This included the prospect of catastrophic medical expenses so often related to motor vehicle accidents. It is common experience that actual living accommodations for a child of separated or divorced parents may frequently change, and in many instances, the change may not be *164 reflected by the precise provisions of a court order. We are unwilling to attribute to the Legislature a fixed definition of the term "residing in his household" with the probable consequence that it would be difficult, if not impossible, for parents to provide their children with the necessary coverage for injuries resulting from automobile accidents despite the parents' reasonable anticipation of coverage for such family members. See Selected Risks, supra, 179 N.J. Super. at 448, 432 A.2d 544; see also Clendaniel v. New Jersey Mfrs. Ins. Co., 96 N.J. 361, 368, 476 A.2d 263 (1984).
Whether a family member is included under the operative language of the PIP statute will depend on the facts of each case as they relate to the question of whether the claimant is a resident of the insured's household. On the undisputed facts here, we are satisfied that Alicia is included within the mantle of PIP protection afforded by her father's policy. She had resided under the same roof with her father for many years, and under the terms of the court order, she continued under his custody and control. Despite her trip to Florida to determine whether she desired to live with her mother, it was implicit that she had the option and ability to return to her father's home for either visitation or permanent residence if she so desired.
There was no indication that either father or daughter undertook to sever their relationship. The father's legal and moral obligation to provide for his child's support and medical care continued, and it does not appear that he made any attempt to preclude Alicia from returning to the protection of his roof whenever she desired. Clearly, Alicia's absence from her father's home for a period of less than three months would not, in the absence of additional circumstances, compel the conclusion that she was no longer a resident of her father's household even if she nonetheless established residency at her mother's home. Miller, supra, 127 N.J. Super. at 45, 316 A.2d 51.
The decisions of other jurisdictions are in accord with our holding that the totality of the circumstances surrounding the *165 relationship of parent and child, as well as the parental obligation, must be considered in determining in determining whether insurance coverage of a parent extends to the child by reason of residency in the parent's household. Mathis v. Employers' Fire Ins. Co., 399 So.2d 273 (Ala. 1981); Row v. United Servs. Auto. Ass'n, 474 So.2d 348 (Fla. Dist. Ct. App. 1985); Farmers Ins. of Columbus, Inc. v. Taylor, 39 Ohio App.3d 68, 528 N.E.2d 968 (1987); Hartford Casualty Ins. Co. v. Phillips, 575 S.W.2d 62 (Tex. Ct. App. 1978); see Pierce v. Aetna Casualty & Surety Co., 29 Wash. App. 32, 627 P.2d 152 (1981) (The court diligently categorized the cases around the country dealing with the issue and after noting the factual nature of the inquiry concluded that no coverage existed).
The summary judgment order in favor of plaintiffs is affirmed.
NOTES
[1] In the Law Division, Rutgers urged that the failure to name Alicia on the application rendered her ineligible for benefits. This assertion has been abandoned on appeal and is clearly without legal basis under N.J.S.A. 39:6A-4. Its factual inadequacy is reflected as well in the certification of the attorney for Rutgers wherein she states: "4. At that time Plaintiff was asked to list all licensed and unlicensed drivers permanently and/or temporarily residing with him." (Emphasis added). Although the application itself refers to "individuals" and not "drivers," Sjoberg's failure to list children who were ineligible to drive appears understandable.