IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

STATE FARM FIRE AND CASUALTY
COMPANY,

    Plaintiff-Appellee,

Vs.

**JOHN E. WHITE, LIZANNE WHITE,**
**And JOHN AUSTIN WHITE, A Minor,**

    Defendants-Appellants.

Shelby Law No. 85194
C.A. No. 02A01-9802-CV-00044

**FILED**

**November 24, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE GEORGE H. BROWN, JR., JUDGE


Robert L. Moore, John H. Dotson; Thomason, Hendrix,
Harvey, Johnson & Mitchell of Memphis
For Appellee

R. Sadler Bailey, C. Philip M. Campbell; Law Offices
of Bailey & Clarke of Memphis
For Appellants


*AFFIRMED AND REMANDED*

Opinion filed:


**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**


**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

    This case concerns a coverage dispute under a homeowners insurance policy.  Appellants,

John E. White (Father), Lisanne White (Mother), and John Austin White, a minor,  (Austin),

appeal from the trial court's order granting summary judgment to Appellee, State Farm Fire and Casualty Company (State Farm), motion for summary judgment and denying their cross-motion for summary judgment.

Father and Mother were married in November of 1988. In 1991, the couple moved into their marital home at 11260 Four Winds Drive in Eads, Tennessee. At such time, the couple's homeowner's insurance was changed to State Farm. Both Father and Mother were the named insureds under the homeowner's insurance policy and both of their names were on the title and mortgage to the house.

In March 1996, the couple separated[1] at which time Mother moved into an apartment in Cordova, Tennessee where she resided until April 1997. Father remained at the house in Eads.

The couple had one child together, Austin, who was born on May 27, 1992. By informal agreement between the couple, Austin went to live with Mother in the Cordova apartment at the time of the separation. The couple further agreed that Father would have custody of Austin every other weekend and every Wednesday. In addition, Austin would stay with Father on Saturdays when Mother had to work and any other time that was beneficial for Austin.

On October 5, 1996, Austin, while staying with Father,[2] was seriously injured in a lawn mower accident at the house in Eads. Father was cutting grass with a riding lawn mower when Austin ran up to the lawn mower and slipped causing his foot to go under the mower severing part of his foot.

At the time of the accident, State Farm had in effect, as previously mentioned, a homeowner's insurance policy covering the property in Eads. While the homeowner's policy provided liability coverage, the policy did not provide coverage for "**bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**." As for what constituted an "insured" under the policy, the policy contained the following definition:

> "**insured**" means you and, if residents of your household:
>
> a.    your relatives; and
>
> b.    any other person under the age of 21 who is in the    care
> of a person described above.

---

[1] Mother filed for divorce on or about July 17, 1996. The divorce became final on July 1, 1997.

[2] At this time, there was no court order that granted custody to one parent or the other.

Subsequently after the accident, a claim was made against Father on behalf of Austin for the injuries and damages sustained. After the claim was made, State Farm filed a complaint for declaratory judgment in order to determine its rights, duties and obligations under the policy. State Farm alleged that there was no coverage under the policy because of the aforementioned exclusion set forth in the policy.[3]

State Farm moved for summary judgment, and Mother and Austin subsequently filed a cross-motion for summary judgment. The trial court granted State Farm's motion while denying Appellants' cross-motion for summary judgment thus prompting this appeal. The only issue for review is whether the trial court erred in granting State Farm's motion for summary judgment and denying their cross-motion for summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness

---

[3] After State Farm filed its complaint in circuit court but before Mother and Austin had been served with process, they filed their own complaint for declaratory judgment in chancery court against State Farm alleging that State Farm was obligated to provide coverage for the accident. The chancery court case was dismissed by consent because State Farm's action in circuit court had been filed first.

regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

State Farm asserts that Austin is an insured under the homeowner's policy covering the house in Eads. Thus, under the terms of the policy as stated above, coverage is not afforded to Austin's injuries and State Farm does not owe Father a duty to defend any lawsuit arising out of the accident nor to provide indemnity to Father. State Farm contends that the exclusion in the homeowner's policy precludes coverage for Austin's injuries for two reasons. First, coverage is excluded because Austin was a resident of Father's household, and thus was an insured falling within the exclusion from coverage. Second, Mother was a named insured under the homeowner's policy, and Austin was a resident in her household thus precluding coverage under the terms of the exclusion in the policy.

Appellants assert that Mother and Austin ceased to be residents at the house in Eads when they moved out of the home in March of 1996. They argue that the exclusion from coverage does not apply because after leaving the residence both Mother and Austin ceased being insureds under the homeowner's policy.

An insurance policy must be construed in a reasonable and logical manner to effectuate the intention of the parties. *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 953 (Tenn. App. 1996). The parties to an insurance policy are free to contract as they see fit as long as the parties remain within the bounds of the law, including public policy. *Id.* The courts in Tennessee have consistently held family member exclusions in liability insurance policies to be valid and binding and not contrary to public policy. *See, e.g., Holt v. State Farm Mut. Auto. Ins. Co.*, 486 S.W.2d 734, 735 (Tenn. 1972); *Omaha Property & Cas. Ins. Co. v. Johnson*, 866 S.W.2d 539, 541 (Tenn. App. 1993); *Beef N' Bird of Am., Inc. v. Continental Cas. Co.*, 803 S.W.2d 234, 237 (Tenn. App. 1990); *Dressler v. State Farm Mut. Auto. Ins. Co.*, 52 Tenn. App. 514, 376 S.W.2d 700, 702 (1963).

Ambiguous provisions in an insurance policy are to be construed against the insurer. *Setters*, 937 S.W.2d at 954. However, in the absence of any ambiguity, it is our duty "'to take the ordinary meaning of the words used, favoring neither party in their construction.'" *Id.* (quoting *Omaha Property & Cas. Ins. Co.*, 866 S.W.2d at 541). "So long as an exclusionary

4

clause merely limits coverage and does not totally emasculate a previously stated coverage, this Court does not conceive a clearly worded exclusion to be repugnant to a previous general statement of coverage." *Beef N' Bird*, 803 S.W.2d at 237.

It is a well-settled principle of law that a person may have more than one residence. "One may have but one domicile or legal residence, but he may have two or more residences." *McDonough v. State Farm Mut. Auto. Ins. Co.*, 755 S.W.2d 57, 65 (Tenn. App. 1988) (citing *Denny v. Sumner County*, 134 Tenn. 468, 184 S.W. 14 (1916).

The parties have not cited nor has our research revealed a Tennessee case dealing with the precise question concerning the resident of a minor child under the circumstances of this case, However, a survey of case law from other jurisdictions reveals that a minor child of divorced parents may be a resident of both households. In *Miller v. United States Fidelity & Guar. Co.*, 127 N.J. Super. 37, 316 A.2d 51 (1974), the mother had legal custody of the minor child while the father had liberal visitation which occurred almost every weekend. Even though the minor child was a resident of his mother's household, the court determined that it was not precluded from finding that the child was also a resident of the father's household. *Id.* at 55.

In *Mutual Serv. Cas. Ins. Co. v. Olson*, 402 N.W.2d 621 (Minn. App. 1987), the court was presented with a situation where the mother was initially awarded custody of the parties' child but custody was later changed to the father. While spending the weekend with his mother, the child was involved in an accident at her house. In determining whether coverage existed under a homeowner's insurance policy, the court stated: "We see no reason why a person who meets the criteria for being considered a resident of an insured's household should be precluded from coverage solely because he is also a resident of another household." *Id.* at 624.

This principle of law was reiterated in *Pellegrino v. State Farm Ins. Co.*, 639 N.Y.S.2d 668 (N.Y. Sup. Ct. 1996). In *Pellegrino*, the court held that the parties' minor son was covered under the father's homeowner's insurance policy as a resident of his father's household even though the son's principal residence was with his mother who had custody. The court noted that the son's principal residence with his mother stemmed from the divorce of his parents and the impossibility of living with both parents full time, rather than from any intent on the son's part to abandon his residence with his father. The court stated:

> Inasmuch as the law recognizes the ability of an individual

5

> to retain residency at more than one location for purposes of insurance coverage, it would be wholly inappropriate to impute any intention by [the son] to abandon the home of his father, the non-custodial parent, following a divorce where [the son] and his father managed to sustain precisely the type of regular and meaningful contact that is the hope and goal of every court which issues a divorce decree which includes provision for visitation.

*Id.* at 670 (citation omitted).

In *Hartford Cas. Ins. Co. v. Phillips*, 575 S.W.2d 62 (Tex. Civ. App. 1978), the court noted that "a person, particularly a child, can have more than one 'residence'" and that "[t]his seems particularly true of a minor child of divorced or estranged parents." *Id.* at 63. Finding that the minor child was a resident of his father's household, the court concluded that such a finding would not necessarily prevent and foreclose a finding that he was also a resident of his mother's household. *Id.* at 64.

Along these same lines is *Aetna Cas. & Sur. Co. v. Williams*, 623 So.2d 1005 (Miss. 1993). In *Williams*, the court stated that a person may simultaneously have multiple residences, that a dwelling place need not be fixed or permanent to qualify as a residence, and that a temporary and transient habitation can qualify as such. *Id.* at 1010. Concluding that the minor child was a resident of both his father's household and his mother's household, the court stated:

> A non-custodial parent is just as much a "parent" as a custodial parent and the child is still a member of the non-custodial parent's family. Consequently, the child is still a "resident" in the household of the non-custodial parent. We hold, therefore, that a child is a resident of both parents' households until he or she reaches the age of majority or becomes fully emancipated.

*Id.* at 1011.

Furthermore, in *Alava v. Allstate Ins. Co.*, 497 So.2d 1286 (Fla. Dist. Ct. App. 1986), a minor child who spent weekdays with his mother and weekends with his father was held to be a resident of both of his divorced parents' households. The court stated that "[d]espite their divorce, [the divorced parents] clearly intended that [the minor child] maintain relationships with both parents" which was manifested by the regularity with which the child visited his father. *Id.* at 1288. The court found the absence of a formal custody order to be immaterial to determining the residency status of the minor child. *Id.*

Finally, this principle of law was carried forward in *Archer v. Nationwide Ins. Co.*, No. 93AP-620, 1993 WL 318823 (Ohio App. Aug. 19, 1993). In *Archer*, the father was originally

6

granted visitation with his minor children every other weekend at his residence. The decree was revised granting the father visitation with the children for three weeks per year at his residence along with two weeks each summer and one week during Christmas. When the children stayed at their father's residence, they would sleep in separate bedrooms which were converted to other uses when the children were not present. The children also kept certain items at their father's house throughout the year. In consideration of the foregoing, the court, finding that the children had regular and consistent residential contacts with their father, concluded that the children were residents of both parents' households. *Id.* at *6.

In *Allstate Ins. Co. v. Summers*, No. 01-A-01-9407-CV00361, 1994 WL 719839 (Tenn. App. M.S. Dec. 30, 1994), Tennessee joined the several other jurisdictions which have held that a minor child of divorced parents may reside with both of them. In *Summers*, a minor child, whose parents were divorced, was involved in an automobile accident along with his stepmother in which both received fatal injuries. The child's mother filed suit. Allstate had issued an automobile insurance policy, which was in force when the accident occurred, to the child's father and stepmother. The policy contained the following exclusion:

> The liability insurance of this policy does not apply to bodily injuries or property damage suffered by the person named on the declarations page, or to anyone who is a member of the family of the person named on the declarations page and who lives with that person.

Allstate asserted that the exclusion applied alleging that the minor child was a member of his father's family and lived with him. The child's mother contended that the child was a resident of her household in that she had liberal visitation with the child, that the child would spend every weekend and the entire summer with her, and that the child was living with her at the time of the accident.

After analyzing case law from other jurisdictions finding a minor child a resident of both households, the Court stated:

> We think it is clear from this record that not only did [the mother's] ex-husband have legal custody of their son, but the son also lived at least nine months of the year with his father. In her affidavit [the mother] states that her son "always spent the entire summer with me." The fact that [the minor child] may have been a resident of her household for six or seven weeks before his death does not in any way result in the conclusion that her son was not also a resident of his father's household.

*Id.* at *3. In denying coverage for the minor child under the policy, the Court concluded by stating that "[t]he mere fact that [the minor child] resided with his mother for several weeks each summer does not mean that he was not a member of his father's household and did not reside with his father as well." *Id.* at *4.

The Court in *Summers* relied upon several of the aforementioned cases in reaching its conclusion. One case relied upon by the *Summers* Court was *Alava v. Allstate Ins. Co.* Appellants attempt to distinguish *Alava,* and ostensibly *Summers*, by relying on *Progressive Ins. Co. v. Estate of Wesley*, 702 So.2d 513 (Fla. Dist. Ct. App. 1997). The *Progressive* Court distinguished *Alava* on grounds that the *Alava* Court was addressing a grant in coverage, not an exclusion from coverage. The court stated that the *Alava* Court reached its conclusion finding dual resident status by interpreting the policy language broadly in favor of coverage. *Id.* at 515. The *Progressive* Court stated that when dealing with a limitation on coverage, as was before them, the policy is to be interpreted narrowly. *Id.*

We do not find Appellants assertions on this point to be persuasive. While the *Progressive* Court limited *Alava* to situations involving grants of coverage, the *Summers* Court obviously did not find this distinction to be relevant to its decision in that the *Summers* Court used the rationale in *Alava* and other cases to deny coverage based on an exclusion within the policy. Furthermore, the *Progressive* Court was dealing with ambiguous terms within the policy in determining the outcome of the issue before them. In the case sub judice, we are not faced with any ambiguous language within the insurance policy to warrant any interpretation of the policy beyond its plain terms.

Appellants also rely heavily upon several cases for their proposition that Austin ceased to be a resident of Father's household when he and Mother moved from the residence. *See, e.g., Prudential Property & Cas. Ins. Co. v. Rinehart*, 704 F. Supp. 960 (E.D. Mo. 1989); *Allstate Ins. Co. v. Fulton*, 345 So.2d 854 (Fla. App. 1977); *Borne v. Jersey Ins. Co.*, 98 So.2d 906 (La. App. 1957); *Allstate Ins. Co. v. Barnes*, 896 S.W.2d 565 (Tenn. App. 1995); *McDonough v. State Mut. Auto. Ins. Co.*, 755 S.W.2d 57 (Tenn. App. 1988); *Farm Mut. Auto. Ins. Co. v. Thomas*, 699 S.W.2d 156 (Tenn. App. 1983). Each of these cases involved adults as distinguished from minor children. This Court does not think these cases involving adults to be necessarily determinative in the present case.

8

With the foregoing, the conclusion follows that Austin was a resident of Mother's household and a resident of Father's household. Austin is a very young child. At the time of the accident, there was no divorce decree and there was no court ordered custody. The parties informally agreed on Austin's custody schedule. Austin resided primarily with Mother because the parents felt that was best for Austin since he is of such a young age. Father had custody of Austin every other weekend and every Wednesday, on Saturdays when Mother had to work, and any other time that was beneficial for Austin. From the record, it is clear that Austin and Father had a very close and intimate relationship with each other, and it was the intent of the parties that the two maintain this relationship.

Furthermore, Father maintained Austin's bedroom at the Eads residence, and Austin kept certain items, such as toys and clothes, at the Eads residence throughout the year. The parties admit that the house in Eads was kept to give Austin a sense of belonging. In his deposition, when asked about the items left at the Eads residence, Father stated that such was left to keep Austin "from feeling totally relocated." It appears from the record that a substantially integrated family relationship existed between Austin and Mother and between Austin and Father during the time that he lived with each one. Mother and Father clearly intended Austin to maintain a close relationship with each of them despite the separation. Thus, it is obvious from the record taken as a whole that Austin was a resident of both households. As such, the exclusion in the homeowner's policy is applicable and coverage is excluded for the injuries Austin sustained as a result of the lawn mower accident.

State Farm also contends that Austin is excluded from coverage because he resides with his mother, a named insured in the policy, and is thus an insured. Although there are apparently no Tennessee cases on point, *Murphy v. Louisiana Farm Bureau Mut. Ins. Co.*, 569 So.2d 637 (La. App. 1990) is quite persuasive. In *Murphy,* a mother of a minor child brought suit for personal injuries against the minor's father and his homeowner's insurer. The insurer filed a motion for summary judgment alleging that the policy excluded coverage. At the time of the inception of the homeowner's policy, the parents of the child resided together at the marital home. At the time of the accident, the parents were judicially separated and the minor child resided with his mother at a different residence while the father remained at the former marital residence. Furthermore, at the time of the accident, both the mother's and the father's name were

9

still on the homeowner's insurance policy covering the marital home. The policy contained a section addressing numerous exclusions from coverage within the policy and also contained a definition section with almost identical language defining an "insured" under the policy as we have in the case before us.

The mother contended that the minor child was not an insured under the policy because he resided with her and not with his father at the insured premises. The court stated that unambiguous and clear terms of an insurance policy, including exclusions, should be enforced. *Id.* at 639. The court then held that since the mother is a named insured with whom the child resided, the child is an insured within the terms of the policy provisions triggering the exclusions section. *Id.*

In the case sub judice, Mother is a named insured on the homeowner's insurance policy covering the marital residence. Austin resides with her at her new residence acquired after the separation. Under the plain terms of the policy, Austin is an insured within the meaning of the policy provisions thus excluding him from coverage under the homeowner's insurance policy.

Accordingly, the order of the trial court is affirmed, and the case is remanded for such further proceedings as necessary. Costs of appeal are assessed against the Appellants.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**