933 A.2d 48 (2007)
396 N.J. Super. 171
ATLANTIC PALACE DEVELOPMENT, LLC, Plaintiff
v.
Freddie & Patricia ROBLEDO, Defendants.
Superior Court of New Jersey, Chancery Division (Civil), Atlantic County.
Decided May 9, 2007.
*49 Kevin J. Thornton, Atlantic City, for Plaintiff.
WILLIAM C. TODD, III, P.J.Ch.
The Fair Foreclosure Act was enacted in 1995. See N.J.S.A. 2A:50-53 to -68. One section of that statute provides an optional foreclosure procedure, available in certain limited circumstances. N.J.S.A. 2A:50-63. When those circumstances are present, a judgment can be entered barring any equity of redemption and vesting title to the property in a plaintiff without exposing the property to a sheriff's sale. That procedure is modeled on that available in tax sale foreclosures. See N.J.S.A. 54:5-98; R. 4:64-1(f). If the defendant debtors do not respond to the foreclosure complaint, an order can be entered fixing the amount, time and place for redemption. That order is served on the defendants. If redemption is not made within the time provided, a final judgment is entered. The interest in question is not exposed to sale by the sheriff. The plaintiff obtains title to the property.
That optional procedure only applies to actions to foreclose residential mortgages. See N.J.S.A. 2A:50-63. The issue presented here is whether that procedure is available in an action to foreclose a mortgage encumbering a timeshare interest. That turns on whether such a mortgage should be considered a "residential mortgage" as that term is used in the Fair Foreclosure Act. For the reasons noted herein, this court has concluded that in certain circumstances that procedure may be used in an action to foreclose a mortgage encumbering a timeshare. On that basis, the court has now directed the Office of Foreclosure to process the plaintiff's request for the entry of an order fixing the amount, time and place for redemption and any subsequent request for the entry of judgment based on a failure to redeem. See R. 1:34-6.
These are the circumstances presented. The Atlantic Palace building is located in Atlantic City, not far from the boardwalk. It is a large tower composed almost entirely of residential units. The building was constructed as a condominium. A number of units in the building were designated for use as timeshares. Plaintiff Atlantic Palace Development, LLC, has sold timeshare *50 interests in those units to third parties for a substantial number of years. The mortgage at issue in this matter encumbers one such timeshare.
Defendants Freddie and Patricia Robledo purchased a one-week timeshare in a particular unit within the building in 1998. Although the gross price paid for that interest is not clear, it does appear that the purchase was partially funded by a note payable to the plaintiff in the amount of $9,270.00, bearing interest at the rate of 17.9% per annum, payable in monthly installments over a period of 10 years. That note was secured by a mortgage on the timeshare interest. The mortgage document, which is titled "Mortgage Floating Week Interval," describes the property mortgaged in the following language:
The legal description of the property is a fee simple undivided interest in Unit 0409 ("Unit") in The Atlantic Palace Condominium ("Condominium") and (except as provided in the Lender's Public Offering Statement and Paragraph 9(d) of the Purchase and Sale Agreement between Borrower and Lender) the right to occupy and use the Unit for one (1) week of each calendar year during the White Season, as more specifically set forth in the Lender's Public Offering Statement, for a period of seven (7) consecutive days commencing at 4:00 p.m. on a day determined by the Lender and/or The Atlantic Palace Interval Association, Inc. ("Interval Association") and ending 12:00 noon on the seventh (7th) day thereafter (the "Interval Week").
That language mirrors the language in the deed to the property.
One section of the mortgage deals with the remedies available to the lender on the borrower's default. That section of the mortgage makes no reference to the optional procedure at issue here. The mortgage describes the lender's remedies as follows:
Lender's Rights Upon Default. If the Lender declares that the Note and Mortgage are in default, the Lender will have all rights given by law, including without limitation those set forth in this Mortgage. This includes the right to do any one or more of the following:
(a) Take possession of and manage Property, including the collection of rents and profits, and apply such rents and profits in the following order:
(i) Payment of a reasonable rental commission payable to Lender or such other rental agent chosen by Lender;
(ii) Payment of any past due interest, principal and other amounts due under the Note and Mortgage;
(iii) Payment of any past due maintenance fees or other charges set forth in the Public Offering Statement; and
(iv) The balance, if any, to the Borrower.
(b) Have a court appoint a receiver to accept rent for the Property to which Borrower hereby consents.
(c) Commence a court action, known as a foreclosure, which will result in a sale of the Property to reduce Borrower's obligations under the Note and this Mortgage.
(d) Sue Borrower for any money that Borrower owes Lender.
(e) Enforce any remedies under the Note.
In addition, Borrower understands that Borrower's use and enjoyment of the Property may be denied by the Interval Association pursuant to its Rules and Regulations until such time that all *51 such delinquent payments are made and other defaults are cured.
The defendants have defaulted on their obligations under the note and have apparently abandoned any interest in the timeshare. A certification submitted on behalf of the plaintiff in support of its pending request for the entry of an order fixing the amount, time and place for redemption indicates that sometime on or before October 20, 2002, the defendants failed to make any payments toward the mortgage, caused the premises to remain vacant, unused and unoccupied, and failed to act in any way that would indicate an intention to return and occupy the property. The plaintiff filed its complaint for foreclosure December 30, 2005. The defendants were served and defaulted. An order entering default was executed January 23, 2007.
Rule 1:34-6 directs that there shall be an Office of Foreclosure (hereinafter, the Office) within the Administrative Office of the Courts. The Office is responsible for recommending the entry of orders or judgments in uncontested foreclosure matters pursuant to R. 4:64-1 and R. 4:64-7, subject to the approval of a Superior Court Judge designated by the Chief Justice. Accordingly, most foreclosure actions are handled through the Office. Matters are only referred to the vicinages when an action is contested or there is some issue as to the Office's ability to act.
Following the defendants' default, the plaintiff did submit an application for the entry of an order fixing the amount, time and place for redemption to the Office in February 2007. The plaintiff anticipated that order would be processed, that the defendants would be given an appropriate opportunity to redeem, and that a judgment could subsequently be processed by the Office if the defendants failed to redeem. As an aside, those types of requests are regularly processed by the Office in tax sale foreclosures, in the fashion suggested by the plaintiff. In this instance, the Office declined to process that request or to recommend the entry of the order requested. Staff within the Office questioned whether the optional procedure available under the Fair Foreclosure Act was applicable to a mortgage encumbering a timeshare, suggesting that a timeshare is more akin to a hotel reservation than to a residence and that this mortgage should not be considered a "residential mortgage" subject to the statutory procedure. Staff have also noted that the mortgage at issue here provides for foreclosure proceedings resulting in a sale of the property but does not refer to the optional procedure at issue here. The plaintiff then filed this application, asking that this court enter the order fixing the amount, time and place for redemption. Notice was provided to the defendants and to the Office. The defendants have not responded.
There are two distinct issues presented. First, is the optional procedure provided by the Fair Foreclosure Act generally available with respect to mortgages which encumber timeshares? Second, assuming the procedure is generally available, what proofs are required to permit the matter to proceed with respect to each particular timeshare interest?
The first issue, as raised by the Office, is relatively straightforward. Can a mortgage encumbering a timeshare be considered a "residential mortgage" as that term is used in the Fair Foreclosure Act? That is an issue of statutory interpretation. Clearly the statute itself and the optional procedure that is a part of that statute were intended to apply to "residential" properties. The optional procedure is established by N.J.S.A. 2A:50-63, which specifically refers to properties which are the subject of "the residential mortgage." N.J.S.A. 2A:50-55 contains a series of definitions *52 applicable to the Fair Foreclosure Act. That statute defines the term "residential mortgage:"
"Residential mortgage" means a mortgage, security interest or the like, in which the security is a residential property such as a house, real property or condominium, which is occupied, or is to be occupied, by the debtor, who is a natural person, or a member of the debtor's immediate family, as that person's residence. This act shall apply to all residential mortgages wherever made, which have as their security such a residence in the State of New Jersey, provided that the real property which is the subject of the mortgage shall not have more than four dwelling units, one of which shall be, or is planned to be, occupied by the debtor or a member of the debtor's immediate family as the debtor's or member's residence at the time the loan is originated.
[N.J.S.A. 2A:50-55.]
That definition contemplates that the property in question is one which is occupied by the mortgage debtor, "as that person's residence." That term is susceptible to differing interpretations. The issue is whether the Legislature intended the statute to apply to properties which one might occupy for relatively short periods, or only to properties which constituted one's principal or permanent residence. The legislative finding and declaration which is a part of the Fair Foreclosure Act touches on the issue in the following language:
The Legislature hereby finds and declares it to be the public policy of this State that homeowners should be given every opportunity to pay their home mortgages, and thus keep their homes; and that lenders will be benefited when residential mortgage debtors cure their defaults and return defaulted residential mortgage loans to performing status.
[N.J.S.A. 2A:50-54.]
The law generally deals with these issues in terms of domicile and residence, and recognizes that one can have only one domicile, but may have multiple residences. That distinction was discussed by the Appellate Division in Miller v. U.S. Fidelity & Guaranty Co., 127 N.J.Super. 37, 42, 316 A.2d 51 (App.Div.1974):
Our courts have recognized the difference between the meaning of the words "residence" and "domicile," and have held that they are not convertible terms. State v. Garford Trucking, Inc., 4 N.J. 346, 353, 72 A.2d 851 (1950). In State v. Benny, 20 N.J. 238, 119 A.2d 155 (1955), the Supreme Court defined these terms and pointed out the underlying difference as follows:
Domicile has been variously defined as the place where a person "has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning," Story, Conflict of Laws (8th Ed.), 41, p. 40, or "the habitation fixed in any place, without any present intention or removing therefrom,". . . .
Residence, on the other hand, though parallel in many respects to domicile, is something quite different in that the elements of permanency, continuity and kinship with the physical, cultural, social and political attributes which inhere to a "home" according to our accepted understanding, are missing. Intention adequately manifested is the catalyst which converts a residence from a mere place in which a person lives to a domicile. Where a person has two homes in which he lives and between which he divides his time, it is still his intention which creates one or the other as his domicile. 1 Beale, Conflict of Laws, § 10.3not the same intention necessary to create a domicile out of a mere residence but *53 such additional intention manifested by a desire to exercise at one of the places the rights growing out of a true domicile and to become subject to the accompanying obligations. [at 250-251, 119 A.2d at 161]
The references to "homeowners," "home mortgages" and the homeowners' need to "keep their homes" in N.J.S.A. 2A:50-54 could suggest a focus on one's principal residence. By the same token, it appears that just as one may have multiple residences, one may have more than one home. That is evidenced by the phrase "vacation home," commonly used to describe a property one occupies for limited periods of time, away from one's principle residence. In the end, it seems clear one could purchase a timeshare, for a limited period of time, with the intention to "reside" in that property.
The Fair Foreclosure Act is remedial legislation, intended to provide protection to debtors. Where the statute applies, the holder of the mortgage is required to serve a notice of intent to foreclose before filing suit. See N.J.S.A. 2A:50-56(a). Additional notices are required in uncontested actions when the plaintiff applies for the entry of judgment. See N.J.S.A. 2A: 50-58. The property owner is given the right to cure any default up until the time a final judgment or any order fixing the amount, time and place for redemption is entered. See N.J.S.A. 2A:50-57.
There are also several additional benefits available to debtors under the statute, in those cases where the lender elects the optional foreclosure procedure. Debtors may insist that the property be exposed to sale by the sheriff after the order fixing the amount, time and place of redemption is entered. See N.J.S.A. 2A:50-63(i). More dramatically, assuming the matter proceeds without a sale, and judgment is entered vesting title in the property in the lender, the debt which was secured by the mortgage is deemed satisfied. The lender is barred from instituting any further proceeding to collect on the debt. See N.J.S.A. 2A:50-63(m). Many debtors might find that to be a substantial benefit. Indeed, that could be a substantial benefit to the debtors at issue here and to others who may have purchased a timeshare and subsequently defaulted on the underlying debt.
It is appropriate to construe exemptions to the statute narrowly, given its remedial nature. See Service Armament Co. v. Hyland, 70 N.J. 550, 558-59, 362 A.2d 13 (1976). Obviously the optional procedure at issue will only be available if the Fair Foreclosure Act itself applies. If it does, the debtors in question will have the benefit of the notice and cure provisions of the statute. This court sees no reason to limit the scope of the statute, by barring its application to mortgages which encumber timeshares, on the theory those mortgages are not "residential" in nature.
There is additional support for that conclusion in the legislative history of the Fair Foreclosure Act, as suggested by the plaintiff. The materials submitted by the plaintiff's attorneys indicate that one version of the statute considered by the Legislature defined the term "residential mortgage" as a mortgage providing security in a residential property "such as a house, real property or condominium, which is occupied, or which is to be occupied, by the debtor, who is a natural person, or a member of the debtor's immediate family, as that person's primary residence." See Chapter 244 of the 1995 Laws of New Jersey, exhibiting the text of Assembly Bill 1064. In the version of the statute enacted by the Legislature, the word "primary" was removed. It seems clear the Legislature did not intend *54 the benefits of the statute to be restricted to mortgages encumbering a person's primary residence.
Timeshares are unique. Timeshare interests have been developed and sold in this state and in other states for years. It appears that developers in New Jersey have proceeded to do so at least in part based on the Planned Real Estate Development Act ("PREDA"), N.J.S.A. 45:22A-21 to -56. Until recently, the regulations based on the PREDA included a definition of timeshare estates. See N.J.A.C. 5:26-1.3. It was only recently that our Legislature acted to specifically regulate the sales of timeshares. That was done through the enactment of the New Jersey Real Estate Timeshare Act, now N.J.S.A. 45:15-16.50 to -16.85, enacted August 2, 2006, with an effective date of October 31, 2006. The definitional portion of the statute, appearing at N.J.S.A. 45:15-16.51, defines the terms "timeshare interest," "timeshare plan," and "timeshare property" in the following way:
"Timeshare interest" means and includes either:
(1) A "timeshare estate," which is the right to occupy a timeshare property, coupled with a freehold estate or an estate for years with a future interest in a timeshare property or a specified portion thereof; or
(2) A "timeshare use," which is the right to occupy a timeshare property, which right is neither coupled with a freehold interest, nor coupled with an estate for years with a future interest, in a timeshare property.
"Timeshare period" means the period or periods of time when the purchaser of a timeshare plan is afforded the opportunity to use the accommodations of a timeshare plan.
"Timeshare plan" means any arrangement, plan, scheme, or similar device, whether by membership agreement, sale, lease, deed, license, or right to use agreement or by any other means, whereby a purchaser, in exchange for consideration, receives ownership rights in or the right to use accommodations for a period of time less than a full year during any given year or a recurring basis, but not necessarily for consecutive years. A timeshare plan may be:
(1) A "single-site timeshare plan," which is the right to use accommodations at a single timeshare property; or
(2) A "multi-site timeshare plan," which includes:
(a) A "specific timeshare interest," which means an interest wherein a purchaser has, only through a reservation system:
(i) a priority right to reserve accommodations at a specific timeshare property without competing with owners of timeshare interests at other component sites that are part of the multi-site timeshare plan, which priority right extends for at least 60 days; and
(ii) the right to reserve accommodations on a non-priority basis at other component sites that are part of the multi-site timeshare plan; or
(b) A "non-specific timeshare interest", which means an interest wherein a purchaser has, only through a reservation system, the right to reserve accommodations at any component site of the multi-site timeshare plan, with no priority right to reserve accommodations at any specific component site.
"Timeshare property" means one or more accommodations subject to the same timeshare instrument, together with any other property or rights to *55 property appurtenant to those accommodations.
One portion of the statute specifically authorizes the creation of a timeshare plan. See N.J.S.A. 45:15-16.56. Other portions of the statute establish a comprehensive regulatory plan requiring registration with the New Jersey Real Estate Commission and the preparation and dissemination of public offering disclosure statements. The statute also provides potential purchasers with a number of substantive protections. See N.J.S.A. 45:15-16.57 to -16.59. Notably, one section of the statute recognizes that a timeshare interest may be encumbered by a mortgage, and may be the subject of a foreclosure action. See N.J.S.A. 45:15-16.66, which authorizes a developer, managing entity or association to join multiple defendant obligors and junior interest holders of separate timeshare interests in one foreclosure action in certain circumstances.
The New Jersey Real Estate Timeshare Act does not address the specific question presented here as to the application of the Fair Foreclosure Act or the use of the optional foreclosure procedure with mortgages encumbering timeshares. The Fair Foreclosure Act was enacted in 1995. The New Jersey Real Estate Timeshare Act was not enacted until 2006 and was apparently the first time the Legislature attempted to regulate the sale of timeshares, as such. It is legitimate to suggest that the legislation enacted in 1995 was not specifically concerned with timeshares, or with the mortgages that encumber timeshare interests. From this court's perspective, it would be inappropriate to conclude that the Legislature intended to limit the application of the Fair Foreclosure Act by exempting timeshares, given the remedial nature of that statute.
For all those reasons, this court has concluded that the provisions of the Fair Foreclosure Act, including the optional foreclosure procedure set forth in N.J.S.A. 2A:50-63, do apply to mortgages which encumber timeshares, assuming the other requirements of the statute are satisfied.
As noted, separate issues are presented as to whether the optional procedure should be available with respect to this particular mortgage. Having concluded one can have a "residential mortgage" on a timeshare, it is still necessary to establish that this mortgage is a "residential mortgage" as that term is defined by the statute. That turns on whether the property in which security was provided is one which was to be occupied by the debtor, at the time the loan originated. See N.J.S.A. 2A:50-55. That is an issue of fact, which must be addressed on a case by case basis. Obviously one can hold interests in a variety of residential properties, without intending to occupy them. That can occur with single family homes and condominiums. That can occur with timeshares. In this case, an "Amended and Restated Public Offering Statement," provided by the plaintiff's counsel, indicates that the plaintiff offered the timeshares for limited purposes. Specifically, the "Restrictions on Interval Transfer," found on page nine of that document, state that "Intervals should only be purchased for the personal enjoyment and use by a Purchaser and his family. Intervals are not designated to be investments, nor should a Purchaser expect a profit or rate of return on the Interval. . . ." It appears that the defendants did intend to occupy the unit in question. The court is satisfied this mortgage is a "residential mortgage."
There are other requirements which must be satisfied before the optional procedure is available. Pursuant to N.J.S.A. 2A:50-63, the procedure is only available when (1) the debtor has abandoned the property; (2) the debtor has voluntarily *56 surrendered the property by signing a deed in lieu of foreclosure in favor of the lender; or (3) there is no equity in the property, as defined in the statute itself. The plaintiff has submitted certifications confirming both that the debtors did abandon the property in or about 2002, and that there is no equity in the property as defined by the statute.[1] Staff from the Office have also raised questions based on the provisions of the mortgage at issue here dealing with the plaintiff's remedies in the event of the debtors' default. The mortgage does provide for foreclosure through the sale of the timeshare interest. It does not provide for the entry of judgment through the optional procedure available under the Fair Foreclosure Act. There is no indication, however, that the Legislature intended the optional procedure to be available only when provisions were made for that in the original mortgage instrument. The procedure in question is, in fact, "optional." It represents an alternative which is available to avoid the costs and delays associated with a sale through the sheriff. In the end, that option is only available if it is acceptable to both parties. The plaintiff must initially elect to proceed under the optional procedure. When that occurs, the defendant debtor retains the right to insist upon a public sale, in which case a judgment will be entered requiring a sale. See N.J.S.A. 2A:50-63(i). There is simply no reason to conclude that the optional procedure should only be available when specifically indicated in the mortgage itself.
The plaintiff appears to have satisfied the procedural and substantive provisions of the statute, and is entitled to proceed with the optional procedure. The plaintiff also appears to have provided all the information necessary to permit the entry of an order fixing the amount, time and place for redemption. An order will be entered referring this matter back to the Office of Foreclosure with instructions to process the plaintiff's request, pursuant to R. 1:34-6.

ORDER
This matter, having come before the court on the plaintiff's motion for an order fixing the time, amount, and place for redemption through the optional procedure, and the court having reviewed the materials submitted, and for reasons set forth in its opinion,
IT IS ON THIS 9th day of May, 2007, ORDERED:
The mortgage on the timeshare in question is considered a "residential mortgage," and the optional foreclosure procedure described in N.J.S.A. 2A:50-63 is appropriate under these circumstances.
The matter is referred back to the Office of Foreclosure with directions to process the plaintiff's proposed order in accordance with the court's opinion.
NOTES
[1] The certifications submitted indicate that the debt encumbering the timeshare was in the amount of $14,235.96 as of April 1, 2007. Based on recent sales, the plaintiff indicates the fair market value of the interest to be approximately $13,500.00. N.J.S.A. 2A:50-63(e) provides that a property shall be deemed to have no equity if the total unpaid balance of all encumbrances is equal to or greater than 92% of the fair market value of the property. This property, as described by the plaintiff, fits within that formula.