270 N.J. Super. 157 (1993)
636 A.2d 606
FIREMAN'S FUND OF NEW JERSEY, PLAINTIFF,
v.
BERTHA M. CALDWELL AND GEORGIA CAVINESS, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Decided September 7, 1993.
*159 C. Edward Speidel for plaintiff (Golden, Rothschild, Spagnola & Di Fazio, P.C., attorneys).
Robert Rosenblum for defendant Caviness (Thomas E. Hood, P.C., attorney).
DE LUCCIA, J.S.C.
This matter is before the court by way of plaintiff's motion for summary judgment in a declaratory judgment action. The case raises the question as to what level of socialization and domesticity must be reached, apart from kinship and joint residency, to establish a household. The issue is presented in the context of the interpretation of a provision in a homeowner's policy which excludes from liability coverage personal injury claims made by relatives residing in the policyholder's household.
The controversy developed as follows: defendants Georgia Caviness (Caviness) and Bertha M. Caldwell (Caldwell) are sisters. Caldwell owns what appears to be a two family dwelling situated at 374 East 24th Street, Paterson, New Jersey. Caldwell's ownership of the property extends from at least 1974 to the present. Caldwell also owned property at 73 Godwin Avenue, Paterson, New Jersey. The record before the court on this motion is unclear as to when Caldwell acquired the Godwin Avenue property or whether her ownership continued on February 23, 1990.
From at least 1974 through June 1990, Caldwell maintained a homeowner's liability insurance policy (the policy) with plaintiff Fireman's Fund. The policy covered the East 24th Street property and perhaps the Godwin Avenue premises, although as to the latter parcel, the record is at best ambiguous.
Sometime prior to February 23, 1990, Caviness took up residence in her sister's home. Her sister lived in the first floor apartment which consisted of five rooms, two of which were bedrooms. An unidentified tenant occupied the second floor apartment. At her deposition, Caviness testified she asked her sister to allow her to reside in one of the two bedrooms because *160 her doctor preferred she not live alone. Caviness's testimony reveals this relationship to be more than familial. Initially, Caviness paid rent weekly, but subsequently, that was changed to monthly. Caviness was emphatic that these arrangements did not contemplate the provision of care by her sister because she was "not sick." Other than sharing common bath and kitchen facilities, the record does not provide additional details as to which, if any, prerogatives of family life the parties enjoyed.
On February 23, 1990, Caviness apparently was injured in a fall which allegedly occurred at the East 24th Street property. The record does not reflect additional details of the incident except that the matter ultimately matured into litigation.
Subsequent to the receipt of a notice of claim for damages from Caviness's attorneys, Fireman's Fund sent Caldwell a letter acknowledging the existence of her sister's claim and advising of its intention to investigate. However, plaintiff cautioned Caldwell that its investigation was proceeding under a "reservation of rights." The Caviness claim apparently eluded an amicable adjustment and litigation ensued. Fireman's Fund assigned counsel to defend Caldwell.
On June 9, 1992, Fireman's Fund informed Caldwell in writing of its determination that the Caviness claim fell outside the scope of coverage afforded under her policy. Fireman's Fund reasoned that Caviness, as a relative residing with Caldwell, qualified as an "insured" under the policy and consequently, no coverage was afforded. Thereafter, Fireman's Fund commenced the within declaratory judgment action against both Caldwell and Caviness, seeking a determination that the Caviness litigation fell beyond the penumbra of coverage provided by Caldwell's policy. Plaintiff also requests authorization to withdraw its defense of Caldwell in the Caviness lawsuit. Caviness has appeared in this action, but Caldwell has defaulted.
The disputed policy contains a definitional section. Section 3 defines "insured" as follows: "`Insured' means you and residents of your household who are: (a) relatives; ...." (emphasis added). *161 Section 4 defines "insured location" as "the residence premises." The term "household" is not defined in the policy.
Section 2 of the policy delineates liability coverages. Coverage is afforded up to the policy limits for a claim or suit brought against the insured for damages resulting from bodily injury or property damage caused by an occurrence. It is undisputed that, if covered, the Caviness accident would qualify as an "occurrence" under the policy.
The policy also contains a section denominated "Section II  Exclusions." Section 2(f) excludes coverage for personal liability claims arising out of "bodily injury to [the policyholder] or an insured within the meaning of part a. and b. of `insured' as defined" in the policy.
The policy also includes an endorsement captioned "Additional Residence Rented to Others  1, 2, 3 or 4 Families." This endorsement is referred to as "HO-70." Caldwell was charged an additional premium for this endorsement. The HO-70 endorsement purports to extend coverage for personal liability and medical payments to the specific premises identified in the endorsement. The portion of the endorsement reserved for the identification of the insured premises is not completed. The policy, however, does not reference any premises other than the East 24th Street property.
Fireman's Fund contends the disputed policy is clear and unambiguous. It argues that Caviness qualifies as an "insured" under the definitional section of the policy since she is both a resident of the Caldwell household and Caldwell's sister. Plaintiff therefore reasons since Caviness is considered an "insured" under the policy, Section 2(f) operates to remove her lawsuit from the parameters of personal liability coverage afforded by the policy. Plaintiff also contends that endorsement HO-70 does not cover the East 24th Street property, but rather was intended to extend only to the Godwin Avenue property.
*162 On the other hand, Caviness argues that the economic relationship between the sisters removes her from the class of relatives contemplated as additional insureds under the policy. Caviness also maintains that endorsement HO-70 must be construed to provide coverage for claims presented by Caldwell's tenants, such as herself and the second floor occupant. Defendant urges to the extent endorsement HO-70 creates an ambiguity in the policy, such ambiguity must be resolved against the insurer.
Plaintiff cites Foley v. Foley, 173 N.J. Super. 256, 414 A.2d 34 (App.Div. 1980), and Knoblock v. Prudential, 260 N.J. Super. 127, 615 A.2d 644 (App.Div. 1992), as support for its position. Plaintiff argues that in both decisions, the Appellate Division sustained as unambiguous, exclusions similar to Section 2(f) of the Caldwell policy. However, upon closer scrutiny, these cases are revealed to be distinguishable.
In Foley, plaintiff filed an action against her husband and State Farm, the homeowner carrier, for damages for personal injuries allegedly sustained at the hands of her husband. The State Farm policy contained an exclusion for claims made by relatives residing in the policyholder's household. This exclusion virtually mirrors that found in the Caldwell policy. Although the court upheld the validity of the exclusion in the State Farm policy, it did so on the basis that plaintiff qualified as an insured under the policy. Unfortunately, the opinion in Foley is devoid of any discussion of the factual or legal basis on which that determination was premised.
In Knoblock, plaintiff's infant son, while residing in plaintiff's household, was injured riding a mini-bike at a relative's home. The injured child's mother commenced a negligence action on his behalf against the relatives, who, in turn, counterclaimed against the mother and filed a third party action against the infant's father, seeking indemnification and contribution. The Knoblocks pursued a declaratory judgment action against Prudential to confirm coverage under the homeowner's policy for the claims asserted against them in the pending negligence litigation. The Law *163 Division ruled the child to be an additional insured under the policy and entered summary judgment in favor of the carrier denying coverage. The Appellate Division affirmed.
As in Foley, supra, the Appellate Division found the exclusion contained in the Knoblock's homeowner policy clear and unambiguous. The exclusion is also virtually identical to Section 2(f) of the Caldwell policy.
However, the Knoblock decision also does not address the issue here raised. The Appellate Division made only fleeting reference to the infant plaintiff's status as a resident of his parents' household. See Knoblock v. Prudential, supra, 260 N.J. Super. at 129, 615 A.2d 644. Neither Foley nor Knoblock address the point raised in this case. Accordingly, these decisions are not controlling.
The coverage issue to be resolved is whether Caviness qualifies as a resident of the Caldwell household as that concept is contemplated by the policy. Since the policy does not define "household," the court must look elsewhere for an answer.
"Household is not a word of art. Its meaning is not defined in certain commonly known and universally accepted limits." See Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 8, 170 A.2d 800 (1961). Our former equity court defined "household" as "... an organized family; a domestic establishment; a family considered as consisting of all those who share in the privileges and duties of common dwelling." See In re Ganey, 93 N.J. Eq. 389, 393, 116 A. 19 (Ch. 1922). While "household" is often considered synonymous with "family," it is nonetheless generally treated as a more comprehensive term than "family." Mazzilli, supra, 35 N.J. at 8, 170 A.2d 800; see also Desiato v. Abbott, 261 N.J. Super. 30, 33, 617 A.2d 678 (Ch.Div. 1992).
The meaning of the term "household" is chameleon-like, varying upon the context in which it is used. Ibid. See also Brokenbaugh v. N.J. Manufacturers Ins. Co., 158 N.J. Super. 424, 431, 386 A.2d 433 (App.Div. 1978). Thus, "household" or "household member" *164 perhaps will be construed differently in the context of the Domestic Violence Act as opposed to an insurance policy setting. In Desiato, the court found defendant's relationship with his girlfriend, which included several overnight stays at defendant's residence, dinner with defendant and his parents, and the maintenance of personal effects such as jewelry, clothing, and grooming items at defendant's residence, sufficient to qualify plaintiff as a member of defendant's household for the purposes establishing jurisdiction under the Prevention of Domestic Violence Act of 1991. Desiato, supra, 261 N.J. Super. at 34, 617 A.2d 678.
Further confounding this issue is the fact that the interpretation of "household" varies with reference to the type of insurance policy under consideration. See Crossfield v. Phoenix Ins. Co., 77 N.J. Super. 476, 479, 187 A.2d 20 (App.Div. 1962). Perhaps "household," like "obscenity," falls into the category of terms which defy a precise definition, yet are readily recognizable when encountered.
Although our courts have grappled with the concept of "household" in a variety of insurance contexts, the precise factual scenario presented in this case does not appear to have been previously addressed by a New Jersey court. However, the issue has been considered in a number of our sister jurisdictions. Several Pennsylvania decisions appear to be pertinent. In Hoff v. Hoff, 132 Pa.Super. 431, 1 A.2d 506 (1938), the court found a son, his wife and their six year old child who lived in the son's parents' home, but who had separate bedrooms and living rooms, purchased their own groceries, usually dined apart from the parents and divided utility bills with the parents, as a matter of law, were not members of the parents' household for the purposes of coverage under the parents' automobile liability policy.
In Donegal Mutual Ins. Co. v. State Farm, 377 Pa.Super. 171, 546 A.2d 1212 (1988), an insured pedestrian injured in a motor vehicle accident was held not to be a member of the household of his cousin from whom he rented a room for living purposes for his periodic visits to Harrisburg, Pennsylvania. The injured pedestrian *165 rented a room in his cousin's home for $30.00 a week. He was permitted to use the kitchen and laundry room as well as to watch television with the cousin's family. However, he did not eat his meals with the family and was permitted to take from the refrigerator only food which he purchased. He was also given a key to the front door of the home, there being no separate entrance to his room from the exterior. Consequently, he had unrestricted access to his cousin's home.
The court determined within the context of Pennsylvania's No Fault Automobile Insurance Act, the injured pedestrian was not "in residence in the same household" of his cousin. Id. 546 A.2d at 1217. The court found the pedestrian's relationship with his cousin did not create a social unit consistent with the concept of family. Ibid.
In Drake v. Donegal Mut. Ins. Co., 422 F. Supp. 272 (W.D.Pa. 1976), the District Court also reviewed a coverage question for an uninsured pedestrian who was struck by an automobile covered for liability purposes by Donegal Mutual Insurance Company. The facts revealed the pedestrian to be a resident in a building owned by her daughter. The daughter was the named insured on an automobile policy which contained a clause extending coverage to relatives of the named insured who resided in the named insured's household. The pedestrian paid rent and utility charges to her daughter. She lived in a separate dwelling unit with a separate outside entrance and separate street address number. There were also other tenants in the building. The pedestrian had her own kitchen, and did her own grocery shopping, as well as her own cooking and housekeeping. She had neither a key nor access to her daughter's apartment. The court declined to consider the pedestrian a member of her daughter's household merely because of their blood relationship and their residence in the same building. The court found the absence of domestic arrangements and circumstances creating a single domestic establishment between the mother and daughter as dispositive of the issue. Id. at 273.
*166 In Rivera v. State Farm Mutual Automobile Ins. Co., 205 Pa.Super. 30, 206 A.2d 338 (1965), a Pennsylvania court concluded that merely because an individual was a boarder in the home of his cousin, such an arrangement in and of itself did not make the boarder a member of the cousin's household for the purposes of coverage under an automobile insurance policy.
In State Farm Mutual Automobile Insurance Co. v. Snyder, 122 Ga. App. 584, 178 S.E.2d 215 (1970), a mother was injured while riding as a guest in an automobile driven by her daughter. The vehicle was owned by the daughter's husband, and he was the named insured on the liability policy. At the time of the accident, the mother lived with her daughter and her husband under the same roof in a one family home owned by the husband. The ground floor contained a living room, dining room, den, bedroom, kitchen and bath, while the second floor consisted of two rooms, furnished and used exclusively by the mother. Except for the kitchen and bathroom, none of the parties shared any other portion of the residence. The record also revealed the parties had separate domestic arrangements including separate utensils and stoves in the kitchen, and time sharing on a washing machine. The parties purchased their own groceries and household supplies and separately prepared and ate their meals. The mother was employed full time and paid $15.00 a week as rent. The Georgia court, based upon this factual scenario, concluded the mother was not a member of her daughter's household, within the context of the policy. The court stated: "The critical distinction when a relative of the insured is injured should ... be whether separate domestic establishments are maintained. `A common roof is not the controlling element.' 12 Couch on Insurance, 2d 495, § 45.520. It is rather a conclusion based on the aggregate details of the living arrangements of the parties." Id. 178 S.E.2d at 217.
These decisions support the principle that "... `one who, though related and living in the same home, maintains a separate apartment therein and divides the expense of maintenance' is not a member of the same household as an insured who resides there. *167 6C Appleman, Insurance Law and Practice (Buckley ed.) § 4411." Donegal Mut. Ins. Co. v. State Farm, supra, 546 A.2d at 1216.
The court recognizes these precedents from foreign jurisdictions all construe the term "household" in the context of extending coverage under automobile liability policies. Consequently, a broad and liberal view is to be taken of the coverage extended. Here, however, the clause in dispute is one of exclusion or exception designed to proscribe protection. Accordingly, a strict interpretation is to be applied. Mazzilli, supra, 35 N.J. at 8, 170 A.2d 800. The application of this maxim requires the court to interpret "household" as employed in the Caldwell policy, to provide coverage, rather than defeat it.
Accordingly, under the exclusion found in Section 2(f) of the policy, the mere residence of a relative in the home of an insured, as a matter of law, does not constitute the relative a member of the insured's household. It must be demonstrated that the parties established a familial relationship and enjoyed at least some significant prerogatives of family life including the sharing of companionship and some degree of joint domesticity.
Absent from the record developed at this stage of the proceedings are essential details of the relationship between the defendants. For example, the court is left to speculate whether they purchased food and household goods jointly or separately, allocated homemaking and housekeeping responsibilities and dined together or independently. Also unanswered is whether their living arrangements were temporary or permanent, the rent charged was at fair market value, and what additional arrangements may have been made respecting utilities. Unresolved at this point is whether arrangements were purely economic or broader, encompassing shared companionship as well as living facilities.
Whether these two sisters shared sufficient prerogatives of family life so as to constitute a single social unit, thus recognizing *168 them as a household, cannot be determined from this record. The full depth and breadth of the relationship formed by the confluence of their lives awaits further discovery.
Also unresolvable at this juncture is the applicability and construction of endorsement HO-70. Plaintiff has submitted an affidavit from its underwriting manager, offering a conclusion that the endorsement is applicable only to the Godwin Avenue property. The court finds such conclusionary statements to be an insufficient basis upon which to make a determination as to the proper construction to be given endorsement HO-70.
As noted, the matter is before the court by way of plaintiff's motion for summary judgment pursuant to R. 4:46-1. The standards for the granting of summary judgment are set forth in R. 4:46-2. The rule provides: "The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged that the moving party is entitled to a judgment or order as a matter of law." See also Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954). Accordingly, the record in this case being insufficient to preclude the existence of genuine issues of material fact, plaintiff's motion for summary judgment against defendants is denied.