730 A.2d 1278

DOROTHY P. GIBSON AND JOHN A. GIBSON, HER HUSBAND, PLAINTIFFS–APPELLANTS, v. MARCELLA CALLAGHAN, DEFENDANT AND THIRD PARTY PLAINTIFF–APPELLANT, v. COUNTY OF ESSEX, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT AND THIRD PARTY DEFENDANT, v. ALLSTATE INSURANCE COMPANY, A FOREIGN CORPORATION REGISTERED TO CONDUCT BUSINESS IN THE STATE OF NEW JERSEY, THIRD PARTY DEFENDANT-RESPONDENT.

Argued May 3, 1999—Decided July 8, 1999.

*Stephen J. McCurrie* argued the cause for appellant Marcella Callaghan (*McCurrie McCurrie & McCurrie,* attorneys).

*William J. O'Day,* argued the cause for appellants Dorothy P. Gibson and John A. Gibson (*Hack, Piro, O'Day, Merklinger, Wallace & McKenna,* attorneys).

*John P. McGee* argued the cause for respondent (*McDermott & McGee,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal requires us to interpret a clause in a homeowners' liability insurance policy that provides a defense and indemnification to relatives of the named insured who are residents of the named insured's household. The dispute arises from the fact that the named insured and the relative seeking coverage do not reside together, nor did they ever reside together. The insured, an elderly woman, moved out of the house she owned after suffering an injury, but continued to maintain her homeowners' insurance policy and intended to return to her house when she was physically able to do so. Three years later, the insured's grandson and his

wife moved into the vacant house. The issue is whether the insured's grandson and his wife are residents of the insured's household, thereby qualifying them as "insured persons" under the policy.

I

In 1931, Mary Maccia purchased a one-family house located at 14 Hyde Road, Bloomfield, New Jersey. Maccia resided there until 1990 when she sustained an injury in a fall that required her to move to her daughter's home in Kearny so that her daughter could care for her. Because Maccia intended to return to 14 Hyde Road when her health improved, she did not sell her house. When she moved in with her daughter, Maccia left many of her belongings, including her furniture, kitchenware, china, silverware set, garden and household tools, wedding dress, and "personal knickknacks" in the house at 14 Hyde Road. She continued to have her mail, checking account statements, pension checks, social security checks, health plan notices, property tax assessments, and Medicare benefits statements sent to 14 Hyde Road. Maccia took only her clothing and other essential items with her to her daughter's home in Kearny.

In 1993, because she was concerned about the risk of burglary and vandalism to her vacant house, Maccia asked her grandson, Donald Callaghan, and his wife, Marcella, to move into and care for her house. Donald Callaghan offered to purchase the property from his grandmother but she declined because she intended to return to her house when her health improved. The Callaghans agreed to pay Maccia $600 per month and to maintain the property. They also paid the electric, gas, heating, phone, and water bills. The Callaghans received their mail at 14 Hyde Road and were registered to vote at that address.

Maccia continued to pay the property taxes for her house. She also maintained her homeowners' liability insurance policy issued by Allstate Insurance Company. Although the Callaghans had maintained a homeowners' insurance policy in their names at their

previous residence, they did not purchase a policy when they moved to 14 Hyde Road.

The parties stipulated that Maccia intended to return to her house when her health permitted. However, from the time she moved in with her daughter until the filing of this appeal, she was unable to return to her house and was confined to her daughter's home in Kearny.[1] Nevertheless, the Callaghans still considered one of the bedrooms in the house to be Maccia's. The Callaghans visited Maccia at her daughter's home approximately once each month.

The underlying action giving rise to this appeal is a tort claim filed against Marcella Callaghan. In September 1994, plaintiff, eighty-eight-year-old Dorothy Gibson, was seriously injured when she was knocked down by Marcella Callaghan's dog while walking in Brookdale Park in Montclair. After Gibson and her husband filed a complaint against Marcella Callaghan, Marcella Callaghan filed a third-party complaint against Allstate, asserting that, because she resided in Maccia's house, she was entitled to a defense and indemnification under Maccia's homeowners' policy. Marcella Callaghan also filed a third-party complaint against the County of Essex. That complaint has been dismissed and is not implicated in this appeal.

The Allstate policy lists Maccia as the named insured and identifies 14 Hyde Road as the insured property. The policy provides:

**Losses We Cover:**

Allstate will pay all sums arising from an accidental loss which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this part of the policy.

We may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or

---

[1] At oral argument, the Court was informed that Mrs. Maccia is now deceased.

fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted our limit of liability.

The "Definitions" section of the policy provides:

1. **"You"** and **"your"**—means the person named on the declarations page as the insured and that person's resident spouse.

2. **"Allstate", "We", "Us"** or **"Our"**—means the company named on the declarations page.

3. **"Insured person"**—means **you** and, *if a resident of your household:*

   a) *any relative;* and

   b) any dependent person in **your** care.

[Emphasis supplied.]

Under the Family Liability Protection section of the policy, "insured person" also means "any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an insured person...." Significant for purposes of this appeal, the policy does not define the term "household."

Allstate filed an answer to Marcella Callaghan's third-party complaint, denying her the right to a defense and indemnification because she did not, according to Allstate, qualify as an "insured person" under Maccia's policy. Allstate moved for summary judgment and, in January 1996, the Law Division granted Allstate's motion. Plaintiffs filed a successful motion for reconsideration, and subsequently the court granted Allstate's motion to sever the coverage issue from the tort action. After a bench trial, the court issued a written opinion concluding that Marcella Callaghan did not qualify as an insured under Maccia's Allstate policy, noting that "[s]uch matters as residence in the same abode, financial support or dependence, sharing of meals, socialization and teaching supervision ... are elements which determine whether a person is a member of a household."

Following unsuccessful motions for reconsideration and leave to file an interlocutory appeal, Marcella Callaghan withdrew her defense to the tort action and a default was entered against her. After a proof hearing, judgment was entered in favor of plaintiff

Dorothy Gibson in the amount of $190,000 plus interest, and in the amount of $40,000 plus interest in favor of Gibson's husband.

In an unpublished *per curiam* opinion, the Appellate Division affirmed the trial court's denial of coverage. The Appellate Division relied on the definition of "household" contained in *Black's Law Dictionary:*

> **Household,** *n.* A family living together. *Schurler v. Industrial Commission,* 86 *Utah* 284, 43 *P.*2d 696, 699. Those who dwell under the same roof and compose a family.
>
> Term "household" is generally synonymous with "family" for insurance purposes, and includes those who dwell together as a family under the same roof. *Van Overbeke v. State Farm Mut. Auto. Ins. Co.,* 303 *Minn.* 387, 227 *N.W.*2d 807, 810. Generally, the term "household" as used in automobile policies is synonymous with "home" and "family." *Bartholet v. Berkness,* 291 *Minn.* 123, 189 *N.W.*2d 410, 412.
>
> [*Black's Law Dictionary* 740 (6th ed.1990).]

Because Marcella Callaghan and Maccia had never lived together, the court held that they were not members of the same household.

We granted the petition for certification of plaintiffs Dorothy and John Gibson and the petition for certification of defendant/third-party plaintiff Marcella Callaghan. 156 *N.J.* 426, 719 *A.*2d 1024 (1998).

## II

### A

Insurance policies are contracts of adhesion and, as such, are subject to special rules of interpretation. *Longobardi v. Chubb Ins. Co.,* 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990); *Meier v. New Jersey Life Ins. Co.,* 101 *N.J.* 597, 611–12, 503 *A.*2d 862 (1986). As this Court noted in *Allen v. Metropolitan Life Insurance Co.,* 44 *N.J.* 294, 305, 208 *A.*2d 638 (1965), an insurance company is "expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices." Therefore, when called on to interpret insurance policies, we "assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees*

*v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 175, 607 *A.*2d 1255 (1992); *see also Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325, 335, 495 *A.*2d 406 (1985) (noting that terms of insurance policies are subject to "careful judicial scrutiny to avoid injury to the public").

█ Certain well-established rules for interpreting insurance policies have developed from that understanding of the nature of insurance policies. Generally, the words of an insurance policy are to be given their plain, ordinary meaning. *Voorhees, supra*, 128 *N.J.* at 175, 607 *A.*2d 1255; *Longobardi, supra*, 121 *N.J.* at 537, 582 *A.*2d 1257. In the absence of any ambiguity, courts "should not write for the insured a better policy of insurance than the one purchased." *Longobardi, supra*, 121 *N.J.* at 537, 582 *A.*2d 1257 (quoting *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 *N.J.* 517, 529, 562 *A.*2d 208 (1989)); *see also Kampf v. Franklin Life Ins. Co.*, 33 *N.J.* 36, 43, 161 *A.*2d 717 (1960) ("When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties.").

█ However, that ambiguities in an insurance policy are to be interpreted in favor of the insured is fundamental. *See Cruz–Mendez v. ISU/Ins. Servs.*, 156 *N.J.* 556, 571, 722 *A.*2d 515 (1999); *Doto v. Russo*, 140 *N.J.* 544, 556, 659 *A.*2d 1371 (1995); *Hunt v. Hospital Serv. Plan of New Jersey*, 33 *N.J.* 98, 102, 162 *A.*2d 561 (1960). When obligated to construe an ambiguous clause in an insurance policy, courts should consider whether more precise language by the insurer, had such language been included in the policy, "would have put the matter beyond reasonable question." *Doto, supra*, 140 *N.J.* at 557, 659 *A.*2d 1371 (quoting *Mazzilli v. Accident & Cas. Ins. Co.*, 35 *N.J.* 1, 7, 170 *A.*2d 800 (1961)); *see also Kook v. American Sur. Co.*, 88 *N.J.Super.* 43, 51, 210 *A.*2d 633 (App.Div.1965) ("[C]onsideration should be given [about] whether alternative or more precise language, if used, would have put the matter beyond reasonable question.").

Further, insurance policies must be construed to comport with the reasonable expectations of the insured. *American Motorists Ins. Co. v. L–C–A Sales Co.*, 155 *N.J.* 29, 41, 713 *A.*2d 1007 (1998); *see also DiOrio v. New Jersey Mfrs. Ins. Co.*, 79 *N.J.* 257, 269, 398 *A.*2d 1274 (1979) ("Recognizing the position of laymen with respect to insurance policies prepared and marketed by the insurer, our courts have endorsed the principle of giving effect to the 'reasonable expectations' of the insured for the purpose of rendering a 'fair interpretation' of the boundaries of insurance coverage."); *Allen, supra,* 44 *N.J.* at 305, 208 *A.*2d 638 ("[An insured's] reasonable expectations in the transaction may not justly be frustrated and courts have properly molded their governing interpretative principles with that uppermost in mind."). That canon of interpretation is consistent with judicial recognition of the "unique nature" of insurance contracts. See *Sparks, supra,* 100 *N.J.* at 338, 495 *A.*2d 406. In exceptional circumstances, "even an unambiguous contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectations of the insured." *Werner Indus., Inc. v. First State Ins. Co.*, 112 *N.J.* 30, 35–36, 548 *A.*2d 188 (1988); *see also* Robert E. Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 *Harv. L.Rev.* 961, 967 (1970) ("The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.").

Concerning exclusion clauses that proscribe or limit coverage, we have observed that "[i]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *American Motorists, supra,* 155 *N.J.* at 41, 713 *A.*2d 1007 (quoting *Princeton Ins. Co. v. Chunmuang,* 151 *N.J.* 80, 95, 698 *A.*2d 9 (1997)). Conversely, clauses that extend coverage are to be viewed broadly and liberally. *Mazzilli, supra,* 35 *N.J.* at 8, 170 *A.*2d 800; *Cobra Prods., Inc. v. Federal Ins. Co.*, 317 *N.J.Super.* 392, 400, 722 *A.*2d 545 (App. Div.1998).

## B

■ With those principles in mind, we turn to the governing language in Maccia's homeowners' policy, "resident of your household." As this Court stated almost forty years ago in *Mazzilli, supra,* 35 *N.J.* at 8, 170 *A.*2d 800,

[h]ousehold is not a word of art. Its meaning is not confined within certain commonly known and universally accepted limits. True, it is frequently used to designate persons related by marriage or blood, who dwell together as a family under a single roof. But it has been said also that members of a family need not in all cases reside under a common roof in order to be deemed a part of the household.

[Citations omitted.]

Accordingly, whether a relative of a named insured is a resident of that insured's household "will depend on the facts of each case." *Sjoberg v. Rutgers Cas. Ins. Co.,* 260 *N.J.Super.* 159, 164, 615 *A.*2d 660 (App.Div.1992); *see also Miller v. United States Fidelity & Guar. Co.,* 127 *N.J.Super.* 37, 41, 316 *A.*2d 51 (App.Div.1974) ("[The meaning of 'resident of your household'] may vary according to the circumstances in each case.").

■ That two people reside under the same roof is neither necessary nor sufficient for a finding that those people share a "household." In *Mazzilli, supra,* the insured owned a piece of property on which two houses were located. 35 *N.J.* at 3, 170 *A.*2d 800. The insured lived in one house, which was covered by a homeowners' insurance policy, and his son and wife, from whom he was separated, lived in an adjacent cottage on the property. Following the entry of a judgment against her in a tort action, the insured's wife sought indemnification under the insured's policy as a "resident of the [insured's] household." *Id.* at 5–7, 170 *A.*2d 800. In holding that the insured's wife was a member of the insured's household, the Court noted that "the term 'household' or 'resident of the household' cannot be so limited and strait-jacketed as always to mean, regardless of facts and circumstances, a collective body of persons who live in one house." *Id.* at 14, 170 *A.*2d 800. The Court concluded that the specific facts of that case supported

the insured's belief that the premises "was all one place where the entire family was living." *Id.* at 15, 170 *A.2d* 800.

Conversely, *Fireman's Fund v. Caldwell,* 270 *N.J.Super.* 157, 636 *A.2d* 606 (Law Div.1993), presented a situation where two sisters lived together in a home owned and insured by one of them. They shared a common bath and kitchen, and the non-insured sister paid rent to the insured sister. After sustaining injuries in a fall, the non-insured sister sought to recover damages from the insurer. The insurer denied coverage, relying on a clause that excluded coverage for injuries to the named insured or a resident of the insured's household. *Id.* at 160–61, 636 *A.2d* 606. In denying the insurer's motion for summary judgment, the court found that there were factual issues regarding "[w]hether [the] sisters shared sufficient prerogatives of family life so as to consti-tute a single social unit." *Id.* at 167, 636 *A.2d* 606. The court noted that relevant factors in determining whether the sisters shared a common household would include whether the rent paid was at fair market value and whether the sisters paid for food and household goods jointly or separately, allocated housekeeping responsibilities, and ate meals together. *Ibid.*

In determining whether there is a common household, our courts often consider whether the insured and the relative seeking coverage share a "substantially integrated family relationship." *See Mazzilli, supra,* 35 *N.J.* at 19, 170 *A.2d* 800; *Arents v. General Accident Ins. Co.,* 280 *N.J.Super.* 423, 429, 655 *A.2d* 936 (App.Div.1995); *Miller, supra,* 127 *N.J.Super.* at 44, 316 *A.2d* 51. For example, in *Arents, supra,* the insured's father sought cover-age under the insured's automobile liability policy. That policy contained a clause that provided coverage to any relative who was a resident of the insured's household. 280 *N.J.Super.* at 425, 655 *A.2d* 936. The insured lived primarily in an apartment in New York City but also maintained a bedroom in his parents' house, where he regularly spent two nights a week. In holding that the insured's father was entitled to coverage as a resident of the son's "household," the court considered the fact that the insured kept

clothing at his parents' house, that he had a car garaged, registered, and insured at that address, and that he made household repairs. *Id.* at 425–26, 655 A.2d 936. The court noted that "[a] 'substantially integrated family relationship' is the touchstone of a household. Exclusivity of residences or households is not demanded...." *Id.* at 429, 655 A.2d 936 (citation omitted).

Similarly, in *Miller, supra,* 127 *N.J.Super.* at 44, 316 A.2d 51, the Appellate Division found that, for purposes of insurance coverage, a child who lived with his mother during the week and with his father on weekends was a resident of both parents' households because the child shared a "substantially integrated family relationship" with both his mother and his father. *See also Cal–Farm Ins. Co. v. Boisseranc,* 151 *Cal.App.*2d 775, 312 *P.*2d 401, 406 (1957) (holding that child who lived part of time with each parent was member of father's household despite fact that child was residing with mother at time of accident); *cf. Fay v. John Waldron Corp.,* 117 *N.J.L.* 123, 126–27, 187 A. 140 (1936) (holding that, under workmen's compensation statute, where decedent lived with children at his sister's house on weekends and stayed in rooming hotel in different town during week, children were members of decedent's household).

Although a person may have more than one residence, a person may have only one domicile. *American Employers' Ins. Co. v. Elf Atochem N. Am., Inc.,* 157 *N.J.* 580, 590, 725 A.2d 1093 (1999); *Miller, supra,* 127 *N.J.Super.* at 42, 316 A.2d 51; *see also Collins v. Yancey,* 55 *N.J.Super.* 514, 521, 151 A.2d 68 (Law Div.1959) ("It is not uncommon in our way of life for persons to have one or more residences based on reasons of health, society, business or employment, without in any wise relinquishing their domicile."). "Domicile has been ... defined as the place where a person 'has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *State v. Benny,* 20 *N.J.* 238, 250, 119 A.2d 155 (1955) (quoting Story, *Conflict of Laws* § 41, at 40 (8th ed.));

accord *State v. Atti,* 127 *N.J.L.* 39, 41–42, 21 *A.*2d 603 (1941), *aff'd,* 128 *N.J.L.* 318, 25 *A.*2d 634 (1942).

Intent is similarly relevant where a relative seeks coverage after having moved away from an insured's household. In that context, the inquiry is whether the relative intends to return to the insured's household or, conversely, whether the relative intends to separate permanently from the insured's household. *Neidhoefer v. Automobile Ins. Co.,* 182 *F.*2d 269, 273 (7th Cir.1950) ("We think that the important and perhaps controlling feature in situations of the instant character is the intent possessed by the departing member of a family."); *see also Sjoberg, supra,* 260 *N.J.Super.* at 164, 615 *A.*2d 660 (finding that daughter, who was living in Florida with mother when injured, was member of father's family "residing in his household" in New Jersey because there was no indication of intent to sever father-daughter relationship); *Crossfield v. Phoenix Ins. Co.,* 77 *N.J.Super.* 476, 479, 187 *A.*2d 20 (App.Div.1962) (holding that son of insured not member of insured's household because son lived apart from insured and "had separated himself from [the insured's] household ... with the intention of permanently so separating himself").

Allstate relies in part on cases from other jurisdictions that have held that a relative may not be entitled to coverage as a member of a named insured's "household" even where that relative resides with the insured. *See, e.g., Drake v. Donegal Mut. Ins. Co.,* 422 *F.Supp.* 272, 273 (W.D.Pa.1976) (holding that mother, who lived on second floor of building owned and insured by daughter, was not resident of household of her daughter, who lived on first floor of building); *Jacobs v. Fire Ins. Exch.,* 227 *Cal.App.*3d 584, 278 *Cal.Rptr.* 52, 59 (1991) (holding that step-great-grandson who lived with parents in one unit of duplex owned by step-great-grand-mother was not resident of her household for insurance coverage purposes despite fact that step-great-grandmother lived in other unit of duplex); *Hoff v. Hoff,* 132 *Pa.Super.* 431, 1 *A.*2d 506, 508 (1938) (holding that, as matter of law, son was not member of father's household despite fact that they lived in same house); *cf.*

*Hawkeye Sec. Ins. Co. v. Sanchez,* 122 *Ill.App.*3d 183, 77 *Ill.Dec.* 569, 460 *N.E.*2d 873, 876 (1984) (holding that claimant might have been resident of insured's "house" but was not resident of insured's "household" because claimant was living only temporarily in insured's house and agreed to move out when renovations were completed); *Thomas v. Vigilant Ins. Co.,* 156 *Mich.App.* 280, 401 *N.W.*2d 351, 353 (1986) (holding that son who resided in house owned and insured by parents not resident of parents' household because parents lived elsewhere); *Cain v. Parent,* 574 *So.*2d 497, 500 (La.Ct.App.1991) (holding that daughter who rented house owned and insured by her mother not entitled to coverage as "resident of [mother's] household" because mother resided in different house). Those cases enunciate several criteria for determining whether a relative of an insured is a resident of that insured's household, including whether the relative and the insured share meals or divide the bills, *Drake, supra,* 422 *F.Supp.* at 273, whether the relative pays rent to the insured, *Thomas, supra,* 401 *N.W.*2d at 353, and whether the relative and the insured "live together as a group or unit of permanent or domestic character, with one head, under one roof or within a common curtilage, who direct their attention toward a common goal consisting of their mutual interest," *Jacobs, supra,* 278 *Cal.Rptr.* at 58 (footnotes omitted).

In a case with facts substantially similar to those before us, the Indiana Court of Appeals considered whether a grandson was a resident of his grandmother's household for purposes of insurance coverage. *Erie Ins. Exch. v. Stephenson,* 674 *N.E.*2d 607 (1996). As a result of her poor health, the grandmother moved out of her house so that she could reside with and be taken care of by the grandson's parents. The grandson moved into the grandmother's vacant house. He paid the utility bills but did not pay rent. The grandmother maintained her homeowners' insurance policy and continued to pay the real estate taxes on her house. When he was sued in a negligence action, the grandson sought a defense and indemnification under the grandmother's homeowners' policy. Citing *Mazzilli, supra,* the Indiana court declined to adopt

"liv[ing] under the same roof" as the "single, exclusive definition of the word ['household']." *Erie, supra,* 674 *N.E.*2d at 610. The court held that the grandson was a resident of the grandmother's household, despite the fact that the grandmother had not resided there for approximately three years. *Ibid.* That holding was based on the fact that the grandson was a "lineal descendant" of his grandmother and that the grandmother and her grandson "function[ed] as members of the same family, trad[ing] places." *Ibid.*

### III

We hold that, at the time plaintiff Dorothy Gibson was injured by Marcella Callaghan's dog, Marcella Callaghan was a resident of Maccia's household. We decline Allstate's invitation to adopt the restrictive definition of "household" contained in *Black's Law Dictionary.* Residence under a common roof is not the touchstone of a "household"; rather, the meaning of "household" will vary depending on the circumstances of a given case. See *Mazzilli, supra,* 35 *N.J.* at 8, 170 *A.*2d 800; *Miller, supra,* 127 *N.J.Super.* at 41, 316 *A.*2d 51.

We find that, under the unique set of circumstances presented in this appeal, the meaning of "insured person" in Maccia's homeowners' policy is ambiguous. Specifically, "resident of your household" is readily susceptible of two interpretations: a resident of 14 Hyde Road (the insured premises), or a person residing in the same house as Maccia. Because the language of the policy is ambiguous, we are required to construe the disputed terms in favor of the insured. *Cruz–Mendez, supra,* 156 *N.J.* at 571, 722 *A.*2d 515. We find ample support in the record for our conclusion that 14 Hyde Road was Maccia's household, despite the fact that she was residing elsewhere: she intended to return to her house when her health permitted; she continued to have all of her mail sent to 14 Hyde Road; she continued to pay the property taxes; and most of her personal possessions remained in her house. We hold, therefore, that Marcella Callaghan was entitled

to a defense and indemnification from Allstate for the tort action filed against her.

The insurance industry has known for almost forty years that the term "household" is susceptible of several interpretations. See *Mazzilli, supra,* 35 *N.J.* 1, 170 *A.2d* 800. If Allstate intended to limit coverage to relatives who resided under the same roof as Maccia or shared a "substantially integrated family relationship" with her, it could have so defined "household" in Maccia's homeowners' policy. *See id.* at 16, 170 *A.2d* 800 ("If the insurer wished to impose such a restriction [that residents of a household must live under a common roof] it would have been a simple matter to do so by express language."); *see also 495 Corp. v. New Jersey Ins. Underwriting Ass'n,* 86 *N.J.* 159, 171, 430 *A.2d* 203 (1981) (Clifford, J., concurring) ("One may reasonably assume that [the insurance industry] has available perceptive and competent counsel aware of judicial decisions interpreting its standard policy, sensitive to the need to mold that policy to those decisions, and skilled in the craft of explicit expression."). Therefore, we will not construe the disputed clause to the detriment of the insured.

Further, a contrary holding would defeat the reasonable expectations of Maccia, the insured. See *DiOrio, supra,* 79 *N.J.* at 269, 398 *A.2d* 1274. That Maccia would take for granted that for purposes of insurance coverage *her* "household" was 14 Hyde Road is understandable because that was the very property that was the insured premises under her homeowners' policy. In addition, when the Callaghans moved into Maccia's house they did not obtain homeowners' liability insurance, despite having maintained such insurance on their previous residence. Although it is unclear from the record why the Callaghans decided not to purchase insurance, they justifiably could have assumed that they were covered under Maccia's policy.

We consider also the argument advanced by plaintiff Dorothy Gibson that because the Callaghans and Maccia shared the same domicile they were necessarily residents of the same household. That Maccia intended to return to her house when her health

improved, combined with all the other indicia of domicile, indicates that 14 Hyde Road remained her domicile. That conclusion supports our holding that 14 Hyde Road also constituted Maccia's household for purposes of coverage under the Allstate policy.

We find it somewhat ironic that Allstate suggests that Donald and Marcella Callaghan, who were living in Maccia's home in order to protect it from vandalism, a risk covered by Allstate under the policy, are not residents of Maccia's household. Moreover, plaintiffs' counsel informed this Court at oral argument that the policy has been in effect and Maccia has been paying the premiums on the policy since 1962. Allstate's receipt and acceptance of Maccia's premiums for so long a period persuasively reflects Allstate's understanding that the policy's definition of "insured person" as including Maccia and any relative "resident of [her] household" constituted a concession and acknowledgment that, for purposes of the policy, Maccia resided in her own household at 14 Hyde Road. If Allstate intended to contest Maccia's residence in her own "household," as that term was used in the policy, then it was obligated to use a definition of "insured person" that acknowledged the possibility that Maccia might no longer reside at the insured premises.

We are not persuaded by the cases from other jurisdictions cited by Allstate. The cases that deny coverage to a relative residing in a house owned by a named insured who lives elsewhere, e.g., Cain, supra, 574 So.2d 497; Thomas, supra, 156 Mich.App. 280, 401 N.W.2d 351, are readily distinguishable. In those cases, although the named insured owned the insured house, the named insured did not live there and had no intention of ever living there. In essence, the named insured was a landlord and the tenant in the insured premises happened to be a relative. Conversely, it is uncontested that Maccia intended to return to 14 Hyde Road. To the extent those cases rely on residence under a common roof as an absolute prerequisite to a finding of a shared "household," we reject their reasoning.

Nor do the cases that equate "household" with a "substantially integrated family relationship" between the insured and the relative seeking coverage dictate a different outcome. The inquiry in those cases was whether the relative seeking coverage, who did not reside exclusively in the insured premises, had a sufficient connection to the insured premises to be considered a member of that "household." In this appeal, that the Callaghans are residents of 14 Hyde Road is beyond dispute: they live in the house, receive their mail there, and are registered to vote there. Rather, the question is whether, at the time plaintiff Dorothy Gibson was injured, 14 Hyde Road was Maccia's household within the meaning of that term as used in Allstate's policy. We conclude that it was.

IV

The judgment of the Appellate Division is reversed. We remand the matter to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.