997 A.2d 1028 (2010)
414 N.J. Super. 85
Jamie SIERFELD, Plaintiff-Respondent,
v.
Curtis N. SIERFELD and Michele Sierfeld, Defendants-Appellants, and
Allstate Insurance Company, Allstate New Jersey Insurance Company, Inc., Defendants-Respondents.
DOCKET NO. A-4280-08T3.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 2010.
Decided April 23, 2010.
*1030 Clara S. Licata, Glen Rock, argued the cause for appellants (Ms. Licata, attorney and on the brief).
William P. Exaros, Morristown, argued the cause for respondent Jaime Sierfeld (D'Alessandro & Cieckiewicz, attorneys, Jersey City, join in the brief of appellants).
John V. Mallon, Secaucus, argued the cause for respondents Allstate Insurance Company and Allstate New Jersey Insurance Company (Chasen, Leyner & Lamparello, attorneys; Mr. Mallon, of counsel and on the brief; Cindy Nan Vogelman and Maria P. Vallejo, on the brief).
Before Judges FUENTES, GILROY and SIMONELLI.
The opinion of the court was delivered by
SIMONELLI, J.A.D.
Plaintiff Jamie Sierfeld sought damages against her parents, defendants Curtis N. Sierfeld and Michele Sierfeld (the Sierfelds) for injuries sustained as a result of a dog bite, which occurred in her parents' home. Plaintiff, who claimed to be temporarily living in her parents' home at the time of the incident, also sought a declaratory judgment against defendant Allstate Insurance Company (Allstate) compelling it to provide coverage and benefits under homeowners and umbrella insurance policies issued to the Sierfelds. Allstate denied coverage, claiming that plaintiff was a resident of the Sierfelds' household, and thus excluded from coverage as an "insured person."
The Sierfelds appeal from the January 20, 2009 Law Division order granting summary judgment to Allstate and dismissing plaintiff's declaratory judgment action. We affirm.
The following facts are adduced from a plenary hearing held on December 22, 2008. Plaintiff is the Sierfelds' adult daughter. She grew up in her parents' home located in Wood Ridge. From 1998 to 2002, plaintiff lived away at college in Scranton, Pennsylvania but used her parents' address as her permanent address. The Sierfelds' address appeared on plaintiff's driver's license until November 2008. Mr. Sierfeld owned and insured plaintiff's car, which was registered in his name at the Sierfelds' address. Plaintiff makes the car payments. She also pays for her own health insurance.
After graduating from college in 2002, plaintiff returned to her parents' home and lived there for approximately three months. In September 2002, she began living in a house in Rutherford. In September 2003, she began living in an apartment in Wallington.
In March 2005, plaintiff, then twenty-five years old, lost her job and moved back to her parents' home, bringing with her *1031 some of her furniture,[1] and her clothing and other personal items. Plaintiff claimed that she was starting her own business and intended to live with her parents no longer than six months. However, the time period was flexible and the Sierfelds would have permitted their daughter to stay longer. Plaintiff paid no rent and did not contribute financially to the household.
Plaintiff had access to the entire house without restriction. She had her own bedroom but shared a bathroom with her parents, where she kept her toiletries, and she shared the kitchen, using the refrigerator, kitchen cabinets and utensils. Plaintiff also did her laundry at the home and used her parents' cable account for her television without charge. She also occasionally cleaned the bathroom and kitchen, and cleaned the dining room more often.
Plaintiff purchased her own groceries because she is a vegetarian, unlike her parents. There was no prohibition on the three eating each other's food; however, plaintiff and her parents rarely shared food or ate dinner together, and they never ate lunch together because the parents were at work. The majority of the time, plaintiff ate with her boyfriend. Plaintiff did not socialize with her parents and they only occasionally watched television together.
Plaintiff held meetings at the home with individuals assisting her with her new business venture. She received business mail at a post office box in Wood Ridge but received her personal mail at her parents' address, including unemployment checks.
On July 22, 2005, approximately four months after plaintiff began living in her parents' home, the family dog bit her, causing a severe facial injury requiring several surgeries and psychological counseling. Plaintiff did not leave the home in six months as planned but continued living there until May 2006, allegedly to recuperate from her dog-bite injuries.
Plaintiff sought compensation for her injuries under the Sierfelds' homeowners and umbrella policies. The homeowners policy requires Allstate to "pay damages which an insured person becomes legally obligated to pay because of bodily injury.. . arising from an occurrence to which this policy applies, and is covered by this part of the policy." The policy excludes coverage for bodily injury to an "insured person," which is defined as the named insured and any relative "if a resident of [the named insured's] household." The policy does not define "resident."
The homeowners policy also requires Allstate to "pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing . . . and pharmaceuticals." The policy excludes coverage for any "bodily injury to any insured person or regular resident of the insured premises."
The umbrella policy requires Allstate to "pay damages which an insured person becomes legally obligated to pay because of bodily injury, personal injury . . . subject to the terms, conditions and limits of this policy." The policy excludes coverage for "any occurrence arising out of bodily injury or personal injury to an insured person." The policy defines "insured person" as the named insured, the named insured's resident spouse, and "any person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household." The policy does not define "resident."
*1032 Allstate filed a summary judgment motion, contending that plaintiff was excluded from coverage as an "insured person" under both policies because she was a resident of the Sierfelds' household. Plaintiff filed a cross-motion for summary judgment,[2] contending that the policies are ambiguous because they do not define "resident," and thus must be construed against Allstate to provide coverage. Alternatively, plaintiff claimed she was not a resident of her parents' household because the parties did not intend for her to live there for an extended period of time. The trial judge denied both motions without prejudice.
After a plenary hearing, the trial judge concluded, incorrectly, that the Sierfelds had abandoned their ambiguity argument and had adopted the definition of "household" set forth in Fireman's Fund v. Caldwell, 270 N.J.Super. 157, 167, 636 A.2d 606 (Law Div.1993) in determining plaintiff's status. The judge also considered and found significant the parties' intent as to the duration of plaintiff's stay but found "that the arrangement was informal, flexible and without any specific duration[,] . . . [and] that the relationship was no different from any child living as a family member of a parents' home." The judge found more significant the fact that there was no lease or structure to plaintiff's use of her parents' home, that plaintiff paid no rent or utility costs, and that the parties occasionally had communal meals together. The judge concluded that "[t]he common dwelling of plaintiff and her parents had a domestic character[,]" and that "under the aggregate of the circumstances, . . . plaintiff had sufficient connection to the insured[s'] premises to be considered a resident member of that household."
After a trial on damages, the trial judge entered judgment in favor of plaintiff and against defendants for $100,000. This appeal followed.
On appeal, Allstate argues as a threshold matter that the Sierfelds lack standing to appeal because they did not file a cross-claim for coverage, an answer to Allstate's cross-claim against them for declaratory judgment, or a cross-motion for summary judgment, and that they lack a sufficient personal stake and adverseness to the other parties in the action. We disagree.
In her complaint, plaintiff asserts a claim against Allstate for coverage under her parents' insurance policies. In its cross-claim against the Sierfelds, Allstate seeks a declaration that it has no duty to defend or indemnify them or to provide coverage under those policies. Allstate also acknowledged in its answer to the complaint that "there now exists an actual, [justicable] controversy between Allstate and [the Sierfelds and plaintiff.]" Also, Allstate never sought a default against the Sierfelds for failure to file an answer to its cross-claim.
In their cross-claim, the Sierfelds seek common law and contractual indemnification against "John Doe." Although Allstate is not specifically named in this pleading, it is clear that the Sierfelds' claim is based on their rights under the policies. Allstate also knew that the Sierfelds had joined in plaintiff's cross-motion for summary judgment.
Further, New Jersey courts have historically taken a liberal approach on the issue of standing. Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 101, 275 A.2d 433 (1971). A sufficient stake in the matter and a genuine adverseness are the basic requirements of standing. N.J. Chamber of Commerce v. *1033 N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 67, 411 A.2d 168 (1980). To have standing, a party need only show a substantial likelihood of "some harm" in the event of an unfavorable decision. In re Adoption of Baby T, 160 N.J. 332, 340, 734 A.2d 304 (1999).
Generally, a financial interest in the outcome of litigation is sufficient to confer standing. Assocs. Commercial Corp. v. Langston, 236 N.J.Super. 236, 242, 565 A.2d 702 (App.Div.), certif. denied, 118 N.J. 225, 570 A.2d 979 (1989). Here, by virtue of the $100,000 judgment against them, the Sierfelds have a financial stake in the outcome of this appeal. They also have a contractual relationship with Allstate, which would require it to pay that judgment if coverage for plaintiff's injuries is found to exist. Accordingly, we are satisfied that the Sierfelds have standing to appeal.
That said, we now address the Sierfelds' contentions that: (1) the terms "resident" and "household" in the policies are ambiguous and must be construed against Allstate in favor of extending coverage; (2) the judge erred in failing to find that the parties' intent that plaintiff's stay was not permanent was the determining factor as to whether she was a resident of her parents' household; and (3) the judge erred in finding that plaintiff was a resident of her parents' household as that term is used in the policies.
We reject the Sierfelds' contention regarding the parties' intent, and we decline to rely on cases from other jurisdictions they cite. New Jersey courts have held that "[i]ntent is . . . relevant where a relative seeks coverage after having moved away from an insured's household." Gibson v. Callaghan, 158 N.J. 662, 675, 730 A.2d 1278 (1999); see also Crossfield v. Phoenix, 77 N.J.Super. 476, 479, 187 A.2d 20 (App.Div.1962). However, no New Jersey court has held, and we decline to hold, that in order for a person to be a "resident" of a "household," that person must intend to make the household his or her permanent residence or domicile. Rather, we focus on whether the words "resident" and "household" are ambiguous as used in the policies, and on whether the facts of this case establish that plaintiff was a resident of her parents' household at the time of the dog bite.
The court's interpretation of an insurance contract is a determination of law. Sealed Air Corp. v. Royal Indem. Co., 404 N.J.Super. 363, 375, 961 A.2d 1195 (App.Div.), certif. denied, 196 N.J. 601, 960 A.2d 396 (2008). We afford no special deference to the trial court's interpretation of the law and the legal consequences that flow from the established facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). Accordingly, we review the trial court's interpretation of the policies de novo. Sealed Air Corp., supra, 404 N.J.Super. at 375, 961 A.2d 1195.
Insurance policies are contracts of adhesion, Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990), and as such they should be "construed liberally in [the insured's] favor." Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961). However,
[l]iberal rules of construction of insurance policies do not sanction . . . emasculation of the clear language of the policy. Unambiguous insurance contracts are enforced in accordance with the reasonable expectations of the insured. The court should read policy provisions so as to avoid ambiguities, if the plain language of the contract permits. The court should not torture the language of the policy to create an ambiguity.
[Stiefel v. Bayly, Martin and Fay, 242 N.J.Super. 643, 651, 577 A.2d 1303 (App. Div.1990) (citations omitted).]
*1034 "[T]he words of an insurance policy are to be given their plain, ordinary meaning." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595, 775 A.2d 1262 (2001). "`In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased.'" Ibid. (quoting Gibson, supra, 158 N.J. at 670, 730 A.2d 1278). "A `genuine ambiguity' arises only `where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 274, 765 A.2d 195 (2001) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979)).
Applying these tenets, we review whether the words "resident" and "household" as used in the policies are ambiguous. "[W]hether a relative of a named insured is a resident of that insured's household" is fact-dependent for each case. Gibson, supra, 158 N.J. at 672, 730 A.2d 1278 (citing Sjoberg v. Rutgers Cas. Ins. Co., 260 N.J.Super. 159, 164, 615 A.2d 660, (App.Div.1992)); Miller v. United States Fidelity & Guar. Co., 127 N.J.Super. 37, 41, 316 A.2d 51 (App.Div. 1974). "That two people reside under the same roof is neither necessary nor sufficient for a finding that those people share a `household.'" Gibson, supra, 158 N.J. at 672, 730 A.2d 1278. "In determining whether there is a common household, our courts often consider whether the insured and the relative seeking coverage share a `substantially integrated family relationship.'" Id. at 673, 730 A.2d 1278 (quoting Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 19, 170 A.2d 800 (1961)).
In determining whether a person is a resident of a "household," courts consider whether the person had his/her own bedroom, kept clothing and toiletries in the home, registered, insured and stored a car at the home, and performed household repairs. Id. at 673-74, 730 A.2d 1278 (citing Arents v. Gen. Accident Ins. Co., 280 N.J.Super. 423, 425-26, 655 A.2d 936 (App.Div.1995)). Courts also consider whether the parties purchased food and household goods jointly or separately, allocated homemaking and housekeeping responsibilities and dined together or independently; whether fair market value rent was charged or utilities paid; and "whether arrangements were purely economic or broader, encompassing shared companionship as well as living facilities." Fireman's Fund, supra, 270 N.J.Super. at 167, 636 A.2d 606.
We are satisfied that under the circumstances of this case, the words "resident" and "household" as used in the policies are unambiguous, and that the parties had a "substantially integrated family relationship" sufficient to make plaintiff a resident of her parents' household at the time of the dog bite. Among other things, plaintiff enjoyed a relationship with the Sierfelds as a family member; she had no rental agreement and did not pay rent or utilities or contribute to household expenses; she had no set plan to move at the time of the dog bite and could have stayed with her parents beyond the six-month period; she had common use of the bathroom, kitchen and laundry room; and her driver's license contained her parents' address, her car was insured and registered there and she received her personal mail there. Plaintiff's use of a bedroom other than her childhood bedroom, and her lack of socializing or sharing meals with her parents or rarely watching television with them does not compel a contrary conclusion.
Affirmed.
NOTES
[1] Plaintiff placed most of her furniture into storage, and stored the rest in her parents' basement or in her boyfriend's parents' garage.
[2] The Sierfelds joined in the cross-motion. Their attorney appeared at oral argument but declined to sit at counsel table or participate in oral argument.