**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1293
_____

MARK D. WELLER,
                                          Appellant

v.

LINDE PENSION EXCESS PROGRAM; JOHN DOES I-V;
LINDE NORTH AMERICA INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cv-04254)
District Judge: Honorable Julien X. Neals
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 24, 2024

Before: KRAUSE, RESTREPO, and MATEY, *Circuit Judges.*

(Filed: August 21, 2024)
_____

OPINION*
_____

---

*This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Mark Weller sued for a larger benefits payment calculated from a settlement payment he received from his former employer Linde. But we agree with the District Court that Weller was not short-changed and will affirm.

**I.**

Linde North America offered both a pension plan ("Plan") and an "excess" pension program ("Program") to select employees. App. 3. How much goes into each plan, known as "excess benefit payments," is calculated annually based on an employee's length of employment and the employee's "covered earnings." App. 3. Covered earnings include "base salary or wages, plus bonuses, or other regular remuneration" but not "overtime pay, shift differential, premium pay . . . or any other form of additional or special compensation." App. 305. An employee's "covered earnings" under the Plan are stated each year in an annual report prepared by Linde's human resources system ("Report").

When the Plan started, excess benefit payments were calculated annually but paid out in a lump-sum upon retirement or termination ("Old Plan"). The Old Plan was amended in 2007 to instead make these payments annually, by March 15 of the following year ("New Plan"). Participants who were enrolled in the Old Plan at the time of the change ("Grandfathered Participants") could choose whether to keep the former one-time distribution method or to adopt the new one and receive their payments annually. But employees who joined after the New Plan began were given no such choice.

Weller joined the New Plan in 2009. In 2015, Weller and Linde signed a settlement agreement ("Agreement") to resolve a legal dispute. Under the Agreement, Linde would give Weller a one-time $1,015,000 payment (the "Payment") to be "treated by Linde as W-2 income," App. 280, and Weller would end his employment with the company.

Linde deposited the Payment into Weller's bank account and issued Weller an earnings statement that labeled the Payment as "Earnings" and included it in his annual "Gross Earnings." Weller's 2015 W-2 also categorized the money as "wages." In contrast, Weller's 2015 Report did not include the Payment in Weller's "covered earnings." As a result, Linde paid Weller roughly $19,000 in excess benefits for 2015, not the $131,000 he would have received if the Payment was treated as "covered earnings."

Hoping to collect the difference, Weller sued Linde and the Program (together, "Linde"), alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), breach of contract, and breach of the covenant of good faith and fair dealing. The District Court denied the Defendants' motion to dismiss. After discovery, both parties moved for summary judgment. The District Court determined that the case was not governed by ERISA and granted Linde summary judgment on that claim. But it also held that there was a genuine dispute of material fact as to whether the Payment was properly considered "earnings" under the Program. The two contract-related claims proceeded to a jury trial.

At the end of trial, the District Court granted Linde judgment as a matter of law on the remaining claims. Weller now appeals both decisions, before and during trial, dismissing his claims.[1]

## II.

### A.

Weller first argues that the Program is subject to ERISA.[2] An "employee pension benefit plan" covered by ERISA is "any plan, fund, or program . . . established or maintained by an employer . . . that by its express terms or as a result of surrounding circumstances . . . results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A)(ii). But "the mere fact that *some* payments under a plan may be made after an employee has retired or has left the company does not result in ERISA coverage" over the whole plan. *Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 188 (3d Cir. 2003) (emphasis added).

The New Plan does not meet this standard. While the Old Plan deferred employee payments until retirement, the New Plan—the only pension available to Weller—does

---

[1] The District Court had jurisdiction under 29 U.S.C § 1132, 28 U.S.C. § 1332(a), and 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the decisions to grant the motions for summary judgment, *Minarsky v. Susquehanna Cnty.*, 895 F.3d 303, 309 (3d Cir. 2018), and judgment as a matter of law, *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 664–65 (3d Cir. 2002).

[2] Linde argues that Weller cannot appeal the denial of his cross-motion for summary judgment because it was not a final order. In substance, however, Weller's argument is also an objection to the District Court's grant of Appellees' motion for summary judgment, which merged with the final judgment below and is therefore reviewable on appeal. *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 228 (3d Cir. 2019).

not. Rather, Weller received a complete excess benefit payment, to be used at his total discretion, annually throughout his employment at Linde. The presence of a handful of Grandfathered Participants who received deferred retirement income does not place the entire Plan under ERISA control. *See Oatway*, 325 F.3d at 188. Nor does the fact that Weller received his final Program payment after his employment with Linde ended. As we observed in *Oatway*, the mere fact of some post-termination payments does not by itself make a benefit plan subject to ERISA. *Id.* The District Court did not err in granting summary judgment for the Defendants by holding that ERISA does not govern the Plan.

**B.**

Nor do we see error in the District Court's judgment as a matter of law. Weller's claim of contractual breach was based on Linde's alleged underpayment of his 2015 excess benefits. To show that the Payment should have been included in his calculated earnings, Weller needed to offer evidence showing the Plan's terms were ambiguous. He did not.

Under New Jersey law,[3] "[c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 143

---

[3] New Jersey courts follow the Restatement (Second) of Conflict of Laws's "most-significant-relationship approach in contract disputes." *Cont'l Ins. Co. v. Honeywell Int'l, Inc.*, 188 A.3d 297, 310 (N.J. 2018). New Jersey appears to have been Weller's domicile while he worked at Linde, and New Jersey is the principal place of business for Linde the state where the Program is administered, and the only state involved in the contract's signing and performance. *See generally* Restatement (Second) of Conflict of Laws § 188(2).

A.3d 273, 280 (N.J. 2016) (alteration in original) (citation and quotation marks omitted). And terms are interpreted to "avoid ambiguities, if the plain language of the contract permits." *Sierfeld v. Sierfeld*, 997 A.2d 1028, 1033 (N.J. Super. Ct. App. Div. 2010) (citation omitted).

The New Plan defines "earnings" as "the amount received by a Participant from an Employer as base salary or wages, plus bonuses, or other regular remuneration . . . for services as an Eligible Employee." App. 305. The New Plan also states that "overtime pay, shift differential, premium pay other than overseas premium pay, payments under any profit-sharing plan, retainer, retirement income payment, or any other form of additional or special compensation" are *not* considered "earnings" for its purposes. App. 305. Linde suggested that the Program incorporated the Plan's language. Weller disputed that reading, but offered no evidence from which the jury could reasonably conclude the Payment was "earnings." Indeed, Weller's only basis for claiming that the Payment should be considered "earnings" was his own opinion, but he admitted on the stand that he is not an expert in pension plans. The District Court properly concluded that Weller had not carried his burden to show "earnings" covered the Payment and did not err in deciding that Weller did not prove contractual breach by Linde.

\* \* \* \*

The District Court did not err in granting summary judgment on Weller's ERISA claim nor in granting judgment as a matter of law in favor of Defendants on the state-law claims. So we will affirm.

6